The Chief Justice

delivered the Opinion of the Court.
In June, 1822, William Fenwick filed, in the Fanklin Circuit Court, a bill in chancery against Alexander Macey, for the redemption of some slaves of whom Macey had been possessed for several years, under a written transfer from Fenwick, which the latter claimed to have been a mortgage.
In 1825, during the pendency of Fenwick’s bill—which had been revived against Macey’s executors—The Bank of Kentucky, claiming a lien on the same slaves, and other property, under a mortgage given to it by Macey and one Lewis, in February, 1822, antecedently to the filing of Fenwick’s bill—filed a bill in chancery in the same Court, against Macey’s executors and others, praying for a foreclosure and sale.
On the 6th of August, 1830, the Circuit Court, being of the opinion that Fenwick’s title to relief had been lost by lapse of time, dismissed his bill. And, on the next day, rendered a decree in favor of the Bank, for subjecting the mortgaged estate to sale, and appointed Macey’s executors commissioners to execute the decree.
In February, 1831, two of those commissioners made the sale to an amount nearly equal to the debt due to the Bank; and the slaves claimed by Fenwick were at that sale purchased by Leander W. Macey, a son of Alexander Macey, deceased, for sums apparently much below their presumed value.
Afterwards, this Court reversed the decree dismissing Fenwick’s bill, and remanded the case with instructions to decree the unconditional restitution of the slaves to him, by Macey’s executors.
A decree for restitution having been accordingly made by the Circuit Court, the executors failed to comply with it; and, being cited to show cause why they should not *199 be punished for a contempt, they responded by alleging the foregoing facts concerning the purchase by Leander W. Macey, under the decree in favor of the Bank, and by averring that he was in possession of the slaves, claiming them as his own under that purchase, and that he refused to surrender them.
For none but a party to a suit, or a purchaser immediately from a party, is a lis pen dens purchaser.
And if the son of M. (the purchaser) had not assets, from his father’s estate with which he might have redeemed the slaves, and, if he made the purchase bona fide for himself, for a valuable consideration, paid out of his own funds, his condition is precisely that of a stranger.
Even if the title sold under the decree were paramount to F's—still if M himself had been the purchaser, as that title was derived from him, he could not have set it up against F, his mortgagor.—His title by the purchase, would have inured to F’s benefit.
If the son had received sufficient assets, by devise or descent from his father, it might have been his duty to redeem the slaves, and his purchase might, therefore, have inured to the benefit of F: [but this is doubtful; vide post.] But, if no such duty had devolved upon him, and if the purchase was, ut supra, for himself, he took such title as the Bank had, and could, try the strength of it, in another suit, unaffected by the suit and decree in favor of F.—to which he was no party, and which could not be evidence against him.
*199 In answer to a rule made on himself, upon a petition filed for that purpose by Fenwick’s administrators—Leander W. Macey filed a written response, substantially like that of the executors; exhibited the record of the suit in which the Bank had obtained the decree under which he had bought the slaves; insisted that Alexander Macey was the absolute owner of the slaves, and was not, as alleged in Fenwick’s bill and as decided by this court, a mere mortgagee; and denied, also, that the decree on Fenwick’s bill concluded the claim of the Bank, or his own derivative title—neither the Bank nor himself having been parties to Fenwick’s bill, and the mortgage to the Bank having been executed prior to the institution of Fenwick’s suit, and not pendente lite. He also insisted on his right to litigate these facts, and offered to introduce proof to establish them.
But the Circuit Judge, being of the opinion that Leander W. Macey was concluded by the decision in the case of Fenwick against A. Macey’s Executors, decided that the response was insufficient; refused to permit any further proof or litigation, and made an order that a process of the nature of an execution in detinue, should be issued against Leander W. Macey, for the slaves in his possession, embraced in the decree against A. Macey’s executors.
This appeal brings up that decretal order for revision.
As there was no lis pendens at the date of the mortgage of February, 1822, the Bank, as mortgagee, was not & pendente lite purchaser; and therefore, never having been a party to Fenwick’s suit, instituted after the date of that mortgage, the Bank cannot be concluded or affected, in judgment of law, by the decree rendered in that suit against Macey’s executors, who were the only parties.
Nor was Leander W. Macey, as purchaser, concluded by Fenwick’s decree, merely on the ground that his pur *200 chase was made between the institution of the suit and the date of the decree; because he did not derive his title from either of the parties to the suit, and was not even a party to it himself. If he made his purchase in good faith, for himself alone, and for a valuable consideration paid out of his own funds, and without having assets descended from his father sufficient for the redemption of the slaves, he should, in our opinion, he treated as any other stranger who might, in good faith, have acquired by purchase, the title of the Bank. And there can be no doubt that, had a perfect stranger to Fenwick’s suit been the purchaser, instead of L. W. Macey, the title of such, purchaser would have been no more affected by the decree in Fenwick’s favor, than the title of the Bank itself would have been.
Had he (the purchaser) been a party to that suit, though he might, in a separate suit avail himself of the title acquired by his purchase, as far as the Bank could have done, he should not be permitted to set it up, to resist a mandate of this court, for the restoration of the slaves. Having been a party to F’s suit, he sho’d have set up his title then: not resist the decree afterwards.
Though the son, who purchased the slaves, was, as to any right that came to him, as heir or distributee of his father, concluded by the decree ag’nst his father’s executors, requiring them to surrender the slaves—he was not concluded by it, as to his title derived from the Bank, by his purchase under its decree. As the decree against the ex’ors could not be applied to him, without fur ther proceedings, he should not be divested of the possession of the slaves, without being allowed to litigate his right, and avail himself of any defence that would have been available to the Bank. And a petition in the nature of a supplemental bill, having been exhibited, to compel him to surrender the slaves, in satisfaction of the decree ag’nst the ex’ors of his father, he should be allowed to answer that petition, and avail himself thereby, of any matter of defence not already decided against him.
*200 If Alexander Macey had continued to live, and had himself made the purchase under the decree in favor of the Bank, he would not thereby have acquired any title-adverse to the claim of Fenwick; because, even if the title of the Bank had been better than that of Fenwick, as between the Bank and Fenwick, still, as the mortgagee of Fenwick, Macey could not have setup against his right of redemption, any title derived from himself whilst he was mortgagee, but his extinguishment of any such derivative title, would have inured to his mortgagor’s benefit.
And, for the like reason, if Leander W. Macey, though not a party to Fenwick’s suit, had received from his father’s estate assets sufficient for redeeming the slaves from his father’s mortgage to the Bank, it may perhaps have been his duty to Fenwick, to redeem them, and his purchase of them at the sale, under the decree on that mortgage, might, on that hypothesis, be treated as a virtual redemption, in the view of a court of equity, extinguishing pro tanto the Bank’s lien for Fenwick’s benefit, and removing out of his way the conflicting claim of the Bank, as a subsequent encumbrancer, with a title which, though derived from Alexander Macey, might possibly be availing against Fenwick, notwithstanding the fact, adjudged in the suit of Fenwick vs Macey, that,as between them alone, Fenwick’s title was the best.
*201 But unless, by such reception of assets, it was his duty to redeem, his right to purchase the title of the Bank, for his own exclusive benefit, was as perfect and unquestionable as that of any other person could have been; and Fenwick’s decree would be no evidence against him, as to the question of title between Fenwick and the Bank, and he would have a right still to assert the title of the Bank in some mode or other, as effectually as the Bank itself might have done, had it never transferred to him its right.
Had he been a party to Fenwick’s suit, though his title derived from the Bank, might, notwithstanding the decree in Fenwick’s favor have been as available in a new suit, as it would be in the hands of the Bank itself, yet we should incline to the opinion that he should not be permitted to urge it against the mandate of this Court, directing him to surrender the slaves to Fenwick’s representatives; but that he should first obey the mandate, and then, in an original and independent suit, assert his derivative claim, unaffected by the decision on Fenwick’s bill; for had his purchase been made before the case was first heard in the Circuit Court, it would have been his duty, if he intended to insist on it against Fenwick, to present it for litigation in that suit; and having failed to do so, he should not be permitted to urge it against the enforcement of the final decree rendered in Fenwick’s favor; and he should not, as we are inclined to think, be allowed to resist a decree to which he was a party, by setting up against its enforcement any new and independent title, acquired by his own voluntary act, after an appeal to this Court for a final decision on the facts which had been litigated.
But L. W. Macey, though represented by his father’s executors, and therefore concluded as to the question of title between those representatives and Fenwick, was not, in fact or in form, a party, and could not, therefore, have been personally subject to any decree which could have been rendered. No decree was rendered against him." He does not deny that, so far as his title, as distributee or heir, may be concerned, the decree against the executors is conclusive against him.
*202 He holds and claims the slaves, not under that title, or under the executors, but under the Bank; and, if the title of the Bank be not, in his hands, concluded by Fenwick’s decree against the executors, and may therefore, be yet successfully asserted against Fenwick’s representatives, it seems to us, that the decree, which could not be applied directly and personally to him, without supplemental proceedings and a new decretal order, should not divest him of the possession of the slaves, without allowing him the privilege of litigating his title, which may not be affected by the decree, and in asserting which, he may not oppose any thing that has been adjudged against him, and may not be obnoxious to the charge of evasion or contempt.
A petition, of the nature of a supplemental bill, was filed against him. He may have a right, as we think, to answer that petition, and litigate his claim. He avers, in his response, that he purchased the slaves for himself, in good faith and with his own means; and we should not presume the contrary, or that he had assets, by devise or descent, with which it was his duty to redeem the slaves. Whether he had received such assets or not; or whether the purchase was a mere contrivance for evading any decree which Fenwick might obtain; or whether the price was paid otherwise than by the proceeds of that sale, may be important questions for ulterior consideration, upon a full investigation of all the facts, and should not be prejudged. Upon the face of the response to the petition, a a prima facie case is made out in favor of the right of L. W. Macey to litigate his derivative claim, before he shall be compelled to surrender the slaves in satisfaction of a decree to which he was no party, and which cannot be addressed to him, without some supplemental procedure and decretal order; which in our opinion, he shows a prima facie right to meet and resist.
As it does not appear that L. W. Macey bought the slaves with assets in the hands of the executors or assets which had come to himself from his father, or whether in fact, any such assets had ever come to him, it would be premature and rather extrajudicial, to determine now, whether, if he had received assets equal to the price bid for the slaves, it was his duty to redeem them for Fenw *203 icks’ benefit, and his purchase should be deemed a redemption, Upon that point we intend to express no opinion.
Nor can we now decide whether the mortgage to the Bank includes the slaves now in controversy. Perhaps it does not. But upon the facts exhibited in the record, we should be inclined to the conclusion that it does. Whether it does or not, can be satisfactorily determined only by extraneous facts not now appearing.
The decretal order against L. W. Macey, is therefore reversed, and the cause remanded, for further proceedings according to the principles of the foregoing opinion.