## CHARLESTON.

I. EARL FOGGIN *v.* SARAH J. FURBEE, EXECUTRIX, ETC., *et als.*

Submitted September 27, 1921.    Decided October 4, 1921.

1. EJECTMENT—*Defendant in Action of Cannot Maintain Bill to Enjoin the Action on Ground that Muniments of Title of Plaintiff is a Cloud Upon His Title.*

   A defendant in an action of ejectment, claiming good title to the property in controversy and having possession thereof, cannot maintain a bill to enjoin the action solely on the ground that the muniments of title of the plaintiff therein constitute a cloud upon his title. (p. 177).

2. SAME—*Defendant Cannot Transfer Action to Equity Court While Relying Upon a Defense Fully Admissible in a Law Court.*

   In a case of concurrent jurisdiction on an issue of fact on

which a question of title depends, such as fraud, the court whose jurisdiction first attaches is entitled to retain it, and the defendant in an action of ejectment, relying upon a defense fully admissible in the law court, cannot transfer the controversy into a court of equity, by a bill to cancel the plaintiff's title papers, as constituting a cloud upon his title, and to enjoin prosecution of the action. (p. 178).

3. SAME—*Prosecution of Action of Ejectment May be Enjoined when Defendant Holds Equitable Title and Plaintiff as Trustee of Defendant the Legal Title by Reason of Fraud.*

If, however, the title of the defendant in such an action is merely equitable and the plaintiff holds the legal title under circumstances making the latter a trustee for the former, by reason of legal or actual fraud in the acquisition thereof, a bill to get in the legal title and enjoin prosecution of the action can be maintained. (p. 179).

4. CONVEYANCES—*Effect of Sale of Land by Purchaser Under Erroneous Decree to a Stranger for Value when Decree is Rendered and Such Stranger is Not Made a Party or Restitution of the Title in Any Way Effected.*

If, after a purchase of land sold under an erroneous decree of sale, by a party to the suit in which it was entered and confirmation of the sale, and before any steps have been taken to correct the error, the purchaser conveys the property to a stranger for value, the legal title passes by his deed; and, if, on subsequent reversal of the decree, such stranger is not made a party, nor restitution of the title in any way effected, the legal title remains in him, even though it may be affected with an equity in favor of other persons, by reason of his having purchased with knowledge of facts rendering his title voidable. (p. 180).

5. SAME.

A stranger to the cause, purchasing under such circumstances, is not a *pendente lite* purchaser, even though he purchased from a party to the suit, because there was no pending suit, at the time, the suit having terminated with the decree of sale and confirmation of the sale. (p. 179).

6. SAME.

Nor is a second stranger purchasing from the first a *pendente lite* purchaser. (p. 179).

7. SAME.

Nevertheless, if the purchase of such first stranger was fraudulent or voidable for any reason, and the second took

the title from him with knowledge of the infirmity therein, or, of facts sufficient in law to put him upon inquiry as to it, the title is voidable in the hands of the latter. (p. 179).

8. SAME.

But, if such first stranger paid a valuable and substantial consideration for the property and took the title, in good faith and without knowledge of such infirmity and of such facts, the title in the hands of his grantee is unimpeachable, even though he had knowledge of facts or circumstances rendering voidable the title of the original purchaser under the decree. (p. 183).

9. SAME—*Relationship of Parties to Not Evidence of Fraud.*

Relationship of the parties to a conveyance of property, contractual and affinitive, assailed on the ground of fraud, is not strictly and properly, evidence of fraud, but only a circumstance requiring more than ordinary care and scrutiny in the consideration of the evidence and facts and circumstances tending to prove fraud, and according to them more than ordinary probative force. (p. 181).

10. SAME—*Inadequacy of Price—Presumption of Fraud.*

Upon an inquiry as to good faith on the part of the parties to a conveyance alleged to have been fraudulent, inadequacy of the price for the property, does not alone, vitiate it, unless it be so great as to raise a presumption of fraud, or as to make it a circumstance sufficient to have put the purchaser upon inquiry as to the good faith of the vendor. (p. 181).

11. SAME—*Sale Made Under Decree Directing Real Estate to be Sold in County Other Than That in Which it is Situate Not Void.*

A sale of real estate made in a county other than that in which it is situated, in conformity with the terms of the decree ordering it, and requiring it to be sold in the county in which the court entering it sat, and afterwards confirmed, in the absence of a statute requiring it to be made in the county of the *locus* of the property, is not void by reason of the place of sale, the decree being merely erroneous in respect thereof. (p. 184).

12. DIVORCE—*Alimony a Lien Upon Real Estate Situated in County Other Than Where Suit is Pending.*

A court of equity has jurisdiction and power, in a suit for divorce, to decree its allowance of alimony and suit money to be a lien upon the real estate of the defendant and subject the same to sale for satisfaction thereof; and, it may properly do so, in the absence of other means of enforcement of the wife's right to such relief against him, even though the

property is situated in a county other than that in which the
suit is pending.   (p. 184).

13.  TAXES—Non-payment of a Purchaser at Judicial Sale Does Not
     Forfeit Title Thereto.

The title to property sold under a decree of a court having
jurisdiction, occupied after sale and deed by the former owner,
and persons claiming under him, taxed in their names and the
taxes paid, and not taxed in the name of the purchaser at the
judicial sale, is not forfeited for non-taxation as to such pur-
chaser, only one title being involved in the conflicting claims
of right and the taxes having been paid on it.   (p. 184).

Appeal from Circuit Court, Wood County.

Suit by I Earl Foggin against H. R. Furbee revived upon
his death against Sarah J. Furbee, his executrix, and others.
From a decree of perpetual injunction, defendants appeal.

*Reversed; Injunction dissolved; Bill dismissed.*

*Reese Blizzard, R. E. Bills,* and *C. M. Hanna,* for appel-
lants.

*William Beard,* for appellee.

POFFENBARGER, JUDGE:

The subject of complaint on this appeal is a decree per-
petually enjoining the prosecution of an action of ejectment,
commenced in the Circuit Court of Wood County, against
the plaintiff and appellee herein, by H. R. Furbee in his life-
time.    While this suit was pending, Furbee died and it was
revived against the executrix of his will and his legatees and
devisees.

The subject matter of the litigation is Lot No. 64 of Stew-
art's Second Addition to the City of Parkersburg, together
with the dwelling house and other improvements thereon. In
a divorce suit instituted and prosecuted to a final decree, in
the Intermediate Court of Marion County, this property was
twice judicially sold and conveyed, and Furbee claims the
title mediately under the first of the two sales.    Under the
second, made after the first had been set aside by proceedings
in the same cause, the plaintiff in this suit, I Earl Foggin,
became the purchaser and obtained a deed for the property.

The theory of the decree complained of is that Furbee was a *pendente lite* purchaser of the property, and, though not made a party to the cause in which it was sold, he was not entitled to a judicial hearing respecting his claim of title. It also proceeds upon the theory of loss of such title as he had, by forfeiture for non-entry of the property for taxation and non-payment of taxes thereon, for a period of more than five years, occurring within the pendency of this suit. During that period, the plaintiff in this cause was in the actual possession of the property and paid the taxes thereon and, upon these facts, he bases his claim of transfer to himself, by virtue of the statute, of such title as Furbee had.

As has been suggested, this controversy has grown out of proceedings in a divorce suit in the Intermediate Court of Marion County. Within a month or two after his marriage, Earnest M. Foggin residing in Marion County, deserted his wife, Marie E. Foggin, transferred his business and property in Fairmont to his father and left the state. In November, 1909, the deserted wife brought her suit for a divorce from bed and board, in which she obtained a decree against the defendant, on June 1, 1910, for the sum of $200.00 to be paid within twenty days from that date, and $25.00 per month beginning on July 1, 1910, as alimony, and for the further sum of $100.00 for counsel fees and costs. At about the date of the institution of the suit, an attachment was sued out, directed to the sheriff of Wood County, and levied on the property in controversy. At the same time, a notice of *lis pendens* was filed and recorded in the Clerk's office of the County Court of said county. On November 7, 1910, an order of sale of the house and lot, based upon the levy of the attachment, was entered. Before this order was executed, it was discovered that the trustee in a deed of trust by which the defendant had conveyed the property to secure a debt to a building and loan association, had conveyed it to an uncle of the defendant, under the pretense of having made sale thereof to him under the deed of trust, and that the uncle had subsequently conveyed it to the defendant's mother, Mary Foggin. Thereupon, an amended and supplemental bill was filed, in which the trustee, the uncle, the mother, the plaintiff

herein and the building association were made parties. In
this bill, it was alleged and charged that there had been no
valid sale of the property under the deed of trust, and that
the deeds made by the trustee and the uncle were fraudulent
and void.    This bill was taken for confessed as to all of the
defendants, and, on May 22, 1911, a decree was entered set-
ting the deeds aside, ascertaining the amount due the plain-
tiff on account of the sums previously allowed her, adjudging
the same to be a lien upon the property, by virtue of the de-
cree of June 1, 1910, and ordering a sale of the property to
satisfy the lien.   In that decree, the plaintiff's attorney was
appointed a special commissioner to execute the order of sale.
He reported the sale as having been made to the plaintiff,
Marie E. Foggin, on July 10, 1911.    By an order entered,
August 5, 1911, the sale was confirmed and a deed ordered to
be made, and it was executed August 26, 1911.    The father,
mother and brother of the defendant, having removed from
Fairmont and entered into possession of the Parkersburg
property, before these proceedings were had, claiming title
thereto in the mother by virtue of the fraudulent deeds set
aside by the decree, a writ of possession was awarded to the
plaintiff, Marie E. Foggin, by an order entered August 31,
1911.   By a deed dated September 21, 1911, she conveyed
the property to J. L. Shriver.   On September 20, 1911, the
writ of possession was executed and on the same day the
father and mother of the defendant took a lease on the prop-
erty from Marie E. Foggin, and assigned to her an insurance
policy, by way of credit on the rent.   On September 21, 1911,
the next day, Marie E. Foggin conveyed the property to
J. L. Shriver, and on September 29, 1911, she assigned to
him the lease she had taken.   By a deed dated November 1,
1911, and acknowledged November 6, 1911, Shriver conveyed
the property to H. R. Furbee, and, on the date of the ac-
knowledgment of the deed, assigned the lease to him.    On
November 8, 1911, an order was entered in the cause filing
the petition of Marie E. Foggin for an absolute divorce, and
on November 10, 1911, Furbee notified Mary and Samuel
D. Foggin to vacate the property.

The proceeding alleged to have been pending in the cause at the date of the conveyance of the property to Furbee was a motion to reverse the decree of May 22, 1911, made under sec. 5, ch. 134 of the Code, it having been a decree taken by default. The notice of this motion was executed only on Marie E. Foggin, the plaintiff, and Mary M. McClain, her next friend. It was not served on either Shriver or Furbee. ·Such service as there was, occurred on November 6, 1911, and an order was entered in the cause, filing the notice on November 10, 1911. It is to be observed that the conveyance to Shriver antedated the service of the notice by several days, about one and two-third months, and that the date of service of the notice and the date of acknowledgment of the deed to Furbee coincide.

Reversal of the decree of May, 1911, by motion under sec. 5, ch. 134 of the Code, after notice filed in the cause, November 10, 1911, as aforesaid, was sought upon nine different grounds specified in the notice. As that decree is not now before this court for review, it is not necessary to mention any of the grounds except the one sustained upon the motion, namely, authorization of the sale of the house and lot situated in Wood County, at the front door of the Court House of Marion County, after advertisement thereof in some newspaper published in Marion County. For this deviation from the law, in the decree of May 22, 1911, it was reversed in so far as it decreed the sale of the property, and the subsequent decree confirming the sale and ordering a deed to be made to the purchaser was set aside and the writ of possession awarded by it quashed. Then the decree of May, 1911, was modified and reformed so as to provide that unless the defendant or some one for him should pay the amount decreed to the plaintiff within thirty days, the property should be sold at the front door of the Court House of Wood County, after due advertisement thereof, instead of the front door of the Court House of Marion County. Properly interpreted, this decree did not reverse the former decree in so far as it adjudged the right of the plaintiff to have the property sold. It merely set aside the sale, corrected the error in the decree as to the manner and place of the sale, and then directed

another sale to be made in accordance with the corrected provisions as to the place of sale and the advertisement.   At the second sale, made soon after the entry of the decree of February 10, 1912, I Earl Foggin became the purchaser at the price of $815.00 and the sale was confirmed June 16, 1913, and execution of a deed to him directed.   Such a deed was executed and delivered to him June 20, 1913.

Although neither the original bill nor the amended bill filed in this cause specifically charges bad faith between the commissioner and the purchaser at the first sale, or Marie E. Foggin and Shriver, to whom she conveyed, the court in its final decree found and adjudged that Marie E. Foggin was not a purchaser in good faith and that the purchase was made for the benefit of the commissioner.   It further finds that Shriver had notice of the non-payment of the purchase money by Marie E. Foggin and that she had merely taken the title to protect the special commissioner, who was her attorney. As to Furbee to whom Shriver conveyed, there is no such finding nor adjudication in the decree.   Upon the theory that he was a purchaser *pendente lite* and therefore took the property subject to the final disposition thereof in the divorce suit, such right as he obtained by the deed from Shriver was held to have been inferior and subordinate to that conferred upon I. Earl Foggin by the decree under which he purchased and the decrees confirming the sale to him and ordering a deed to be made to him.

While these proceedings were pending in Marion County, Furbee was endeavoring to obtain possession of the property by an action of unlawful detainer in Wood County.   Before a justice of the peace and in the Circuit Court on appeal, he obtained judgments and a writ of possession, but, after reversal of the decree of May 22, 1911, his writ was quashed. Then he began his action of ejectment and this suit to enjoin followed.

Although the allegations of the bill are rather vague, its purpose is clear.   It seeks cancellation of the deeds from Marie E. Foggin to Shriver and from Shriver to Furbee, as clouds upon the plaintiff's title,   and also an injunction against the prosecution of the action of ejectment, founded

upon them. If the bill cannot be sustained as one for removal of cloud from title for any reason, and the matters set up in it are fully admissible defenses in the action of ejectment, the demurrer interposed to it should have been sustained. Two fragmentary and insufficient grounds of jurisdiction can not be made into a good one by adding them together. One of the requisites of a good bill for the quieting of title or removal of cloud from title is complete and perfect legal and equitable title in the plaintiff. If his title is doubtful, uncertain or merely litigious, he can not maintain a bill for removal of cloud therefrom, even though he may be in possession of the land. *Orton* v. *Smith,* 18 How. (U. S.) 263; *Frost* v. *Spitley,* 121 U. S. 552; *Mills* v. *Henry Oil Co.,* 57 W. Va. 255; *Logan* v. *Ward,* 58 W. Va. 366, 370; *Hitchcock* v. *Morrison,* 47 W. Va. 206. Another thing to be observed is that a court of equity will not enjoin an action of ejectment, in every instance in which it will entertain a bill for removal of cloud upon title. One of the grounds of jurisdiction to remove cloud is the inability of the plaintiff to vindicate his title in any other way, because, being in possession, he cannot sue in ejectment, or need not do so, and the adverse claimant declines to put his own title to risk or hazard by bringing an action of ejectment. This reason for equity jurisdiction does not exist in those instances in which the adverse claim-ant is asserting his title by an action of ejectment, and thus giving the party in possession an opportunity to assert whatever title he has by way of defense. High on Inj. Sec. 96; *Stockton* v. *Williams,* 1 Doug. (Mich.) 546. The right of a defendant in an action of ejectment to enjoin the action is limited also by the rules and principles applied in cases of concurrent jurisdiction. If the defendant has a full and complete defense to the action in the law court, and it is such in character as confers concurrent jurisdiction, he can-not transfer it to a court of equity. Equity will take cognizance of almost every cause of action growing out of a fraud; but, in such cases, courts of law often have concurrent jurisdiction; and, if a court of law has taken cognizance of such a cause of action and the parties are before it, with full opportunity to assert their rights, offensive and defensive, the

defendant cannot transfer it to a court of equity. *Prewett v. Bank*, 66 W. Va. 184; *Bruner & McCoach v. Miller*, 56 W. Va. 36; *Ellis v. Amick*, 53 W. Va. 421; *State v. Fredlock*, 52 W. Va. 232; *Grand Chute v. Winegar*, 15 Wall. (U. S.) 373; *Ins. Co. v. Dailey*, 13 Wall. (U. S.) 616. Hence, to say an action of ejectment may be enjoined in every instance in which the plaintiff's muniments of title will constitute a cloud upon the defendant's title, in case he shall prevail, would be manifestly inconsistent with well settled principles of our jurisprudence. Whether injunction will lie depends upon the circumstances. There must be some good reason for resorting to equity. If the question of title depends upon issues of fact and they are found in favor of the plaintiff in the law action, the defendant therein has no title to be cleared.

As the original bill in this cause disclosed nothing more than clouds on the plaintiff's alleged title, by its allegations and claims, the demurrers to it were improperly overruled. But there is a replication to the answer of the defendants, in which there are allegations of collusion and fraud on the part of the special commissioner, Marie E. Foggin, Shriver and Furbee, which, if true, made the conveyance fraudulent in law, if not in fact. These matters were brought into the cause in a very irregular and unusual way. They should have been set up by an amendment to the bill. However, in our practice, form is generally disregarded and pleadings treated and dealt with according to their substance. As these matters are in the pleadings under an erroneous designation and in bad form, they may be deemed, nevertheless, to have been brought in by way of amendment, and they were evidently so regarded by the trial court. In part, the decree stands on them and the evidence was taken as if they were part of the plaintiff's bill. The defect in the bill has thus been cured, if these allegations taken in connection with the original bill make out a good cause of action.

In our opinion, the bill, treated as having been so amended, discloses only an equity in the plaintiff, of which he could not avail himself in the action at law. Although the decree under which the first sale was made was reversed and

vacated in so far as it ordered the sale and the sale set aside, the legal title had been conveyed to Marie E. Foggin and then passed successively from her to Shriver and Furbee. Shriver was not a *pendente lite* purchaser, because he bought after final decree and before the proceeding for reversal was commenced in any way. *Perkins* v. *Pfalzgraff*, 60 W. Va. 137; *Dunfee* v. *Childs*, 59 W. Va. 226. Though having had the legal title and having passed it to Furbee, before the decree was reversed, neither of them was made a party to the procedure for reversal. No matter whether Shriver acquired the title in good faith or not. He had the legal title, and Furbee acquired it from him, not from any party to the suit. In correcting its errors, on the motion for reversal, the court did not attempt to effect any restitution of title or rights, nor was it asked to do so. The notice to reverse was not served on either Shriver or Furbee to whom the legal title had passed, however much it may have been affected with equities in favor of Ernest Foggin and others claiming under him. The purchaser under the second sale obviously did not acquire the legal title. He acquired only a semblance of such title together with an equity against Furbee, if the allegations of the bill and informal amendment are true. Having no defense to the action of ejectment, available in a court of law, but, having superior right in equity, the plaintiff herein could resort to equity to acquire the legal title and enjoin the action at law.

Obviously, Furbee's purchase is not within the rule *lis pendens*. That rule is very rigid and harsh when it applies. Being so, its limitations are equally rigid and sometimes arbitrary. One of them is that the purchase must have been made from a party to the litigation. *French* v. *The Loyal Company*, 5 Leigh 680; *Carr* v. *Callaghan*, 3 Littell (Ky.) 365; *Macy* v. *Fenwick's Adm'r.*, 9 Dana 198. Shriver was in no sense a party to any suit at the time of his conveyance to Furbee, nor, having purchased after final decree, was he a purchaser from a party to a pending suit.

It does not follow, however, that the title he acquired may not be affected with an equity in favor of the plaintiff, arising out of actual knowledge of facts creating such an equity.

If Marie E. Foggin's purchase was merely pretended and fraudulent and Shriver took her title with knowledge of the fraud and Furbee took it from him with knowledge of its infirmity, the plaintiff, succeeding to the right of Ernest Foggin, is no doubt entitled to have both deeds set aside. There are few, if any, exceptions to the rule that one who purchases property with notice of an equitable right of another in it, cannot sustain his purchase as against the claims of such other person. To prevail he must have purchased for value, in good faith and without notice of the outstanding legal or equitable right.

There is no direct proof of knowledge on the part of Shriver, at the time of his purchase, that Marie E. Foggin had not paid the purchase money, nor that she was not a purchaser in good faith.    She had no money with which to buy the property and in fact did not pay the purchase price in money.    As she was the sole creditor represented in the suit and her lien exceeded the sum she agreed to pay, the commissioner reported it as having been paid and brought into court.    It may have been treated as having been paid and disbursed to her, though the report does not say so.    Then her attorney, after having conveyed the property to her, as special commissioner, and procured recognition of her title by the Foggins and their agreement to pay her rent as her tenants, found a purchaser of it, for her, in the person of his brother-in-law, Shriver, whose check in payment of the contract price, $310.00, payable to her attorney, has been produced and filed as evidence.    The price thus paid, as well as the amount of her bid $210.00, was inadequate, but this fact as well as the relations of the parties, contractual and otherwise, are mere circumstances to be considered.    The relations subsisting among them are not evidence of fraud. They merely call for more careful and scrutinous consideration of facts and circumstances tending to prove fraud, and give unusual probative force to such facts and circumstances. *Farmers Transportation Co.* v. *Swaney,* 48 W. Va. 272; *Livey* v. *Winton,* 30 W. Va. 554; *Knight* v. *Capito,* 23 W. Va. 639; *Moore* v. *Tearney,* 62 W. Va. 72, 82.    Looking to the other circumstances, it is found that the purchaser at the judicial

sale had no money with which to buy, but had a decreed lien on the property for more than twice the amount of her bid; that the report of the sale inaccurately or falsely stated she had paid the purchase money and it was in the hands of the commissioner; that she owed the commissioner a fee she could only pay by a sale of the land; that the price she had agreed to pay was much less than the value of the property; that, as soon as she obtained her deed and recognition of her title by the occupants of the property, she conveyed it to Shriver, in consideration of a sum less than its value; that the check of the purchaser was made payable to her attorney; and that the attorney induced the purchaser to buy the property. But there is no proof that Shriver knew any of these facts, except the last three. They fall far short of proof that the commissioner purchased the property from himself, merely using his client and his brother-in-law as trustees and, in their names, concealing his real transaction. It cannot be inferred from the mere circumstances of relationship and procurement of the sale, that he furnished Shriver the money he paid to Marie E. Foggin, nor that Shriver had any knowledge of the true state of the title. Nor is there any proof that Shriver knew the price paid for the property at the judicial sale. We express no opinion as to whether, upon the facts admitted, the commissioner was the real purchaser of the property, or whether Marie E. Foggin acted in good faith. It suffices our purpose to say Shriver is not shown to have known what had occurred between those parties.

The bill charging fraud was taken for confessed as to Shriver, he not having appeared to it or made any defense. His admission thus made, however, cannot affect the title of Furbee whose answer denied, for Shriver as well as himself, all charges of collusion, fraud and knowledge of facts sufficient to put them, or either of them, upon inquiry as to any equities against Marie E. Foggin and her attorney. Subsequent declarations or admissions of a grantor in a conveyance assailed on the ground of fraud are generally inadmissible. *Colston* v. *Miller,* 55 W. Va. 490, 494. Nothing exceptional is perceived in this case, upon which it can be excluded from the operation of the general rule.

To acquire and maintain the status of *bona fide* purchaser one must pay a valuable consideration.    This Shriver did. What he paid, however, evidently was not the full value of the property.    It is sometimes said the price paid must be a fair one. *Lohr* v. *George,* 65 W. Va. 241, 248; *Speidel Grocery Co.* v. *Stark & Co.,* 62 W. Va. 512.    This expression found in these and other cases can hardly be considered as anything more than a *dictum,* since, in none of them, was sufficiency of the amount of the consideration involved or passed upon.    By the great weight of authority, it suffices that the payment is substantial and not so inadequate as to shock the conscience and thus raise an inference of fraud. 27 R. C. L. p. 659; *Beebe State Co.* v. *Austin,* 92 Ark. 248; *Booker* v. *Booker,* 280 Ill. 529; *Koch* v. *West,* 118 Ia. 468; *Ennis* v. *Tucker,* 78 Kan. 55; *Strong* v. *Whybark,* 204 Mo. 341; *Eastman* v. *Hunter,* 102 Tex. 145; *Bassett* v. *Nosworthy,* 2 White & T. Leading Cases, (7th. Ed.) 130.    In the case last cited, Lord Keeper Finch said: "The question is not whether the consideration be adequate,    but whether it be valuable."    If it is so inadequate, however, as to suggest fraud, the inadequacy is evidence of lack of good faith.    The offer to take a grossly inadequate price suffices to put the purchaser upon inquiry as to whether the title is perfect. 27 R. C. L. p. 712.    Under our decisions, inadequacy of price does not prove fraud, unless it is very gross.    Half the estimated value of property is not such inadequacy.    *Fisher* v. *Lallance,* 29 W. Va. 512, 521; *Bradford* v. *McConihay,* 15 W. Va. 732.    Shriver is not shown to have known anything about the property in question beyond what he may have been told by the seller and what was indicated by the lease. He resided at a great distance from it and likely had never seen it.    Under these circumstances, it cannot be said that the price he paid suggests fraud in his purchase.

It is unnecessary to inquire whether knowledge on Shriver's part, of the error for which the first sale was set aside would have precluded right in him, to purchase, for there is no proof of such knowledge.    Having purchased after final decree in the cause, sale of the property and confirmation of the sale without notice of any fraud or any equity affecting

the title of his vendor, and paid a valuable and substantial consideration, he was a *bona fide* purchaser, and acquired indefeasible title, unless for some reason the sale was *coram non judice.*

Barring invalidity for lack of jurisdiction in the court, he could pass such title to Furbee, even though the latter may have known Marie E. Foggin's purchase was not made in good faith.   *King* v. *Porter,* 69 W. Va. 80, 84; *Curtis* v. *Lunn,* 6 Munf. 42.

The error for which the decree of sale was reversed in part was not an act in excess of the court's jurisdiction.   Of course the sale should have been made in the county in which the property was, to the end that it might bring as nearly its true value as possible, and authorization of a sale thereof in another county was a palpable error.   But jurisdiction is not, in all cases, limited to the county in which the court sits. In a proper manner and in proper cases, it can sell land in another county and nothing in the statute expressly inhibits the making of a sale of land situated in one county, in another county in which the court sits.   Such a sale is not like that of land situated beyond the territorial limits of the state, to which the court's jurisdiction could not extend under any circumstances.   Authorization of the making of the sale in Marion County was, therefore, a mere error in the exercise of jurisdiction.   16 R. C. L., p. 47; 24 Cyc. p. 23.

Nor was it beyond the power of the Intermediate Court of Marion County, in the divorce suit, to charge the alimony and suit money allowed the plaintiff therein, upon the property of the defendant, situated in Wood County, as a lien, and decree a sale thereof to satisfy it.   The jurisdiction is vested by sec. 11, ch. 64 of the Code, empowering the court on decreeing a divorce, to make ''such further decree as it shall deem expedient concerning the estate and maintenance of the parties.''   *Goff* v. *Goff,* 60 W. Va. 9; *Reynolds* v. *Reynolds,* 68 W. Va. 15; *Crowder* v. *Crowder,* (Va.) 99 S. E. 746.   If it were not so provided, it would often be within the power of a faithless husband wholly to defeat the wife's right to alimony.

There is nothing in the contention that the Furbee title has

been forfeited by reason of non-taxation and transferred to the plaintiff.   Both parties claim the same title, the Ernest Foggin title, and the property has been taxed every year, in the name of one of the claimants.   *State* v. *West Branch Lumber Co.,* 64 W. Va. 673, 677; *Lynch* v. *Andrews,* 25 W. Va. 751; *Sturm* v. *Fleming,* 26 W. Va. 54; *Bradley* v. *Ewart,* 17 W. Va. 598; *Lohrs* v. *Miller,* 12 Gratt. 452.

From these principles and conclusions, it results that the decree complained of must be reversed, the injunction dissolved and the bill and amended bill dismissed.

*Reversed; Injunction dissolved; Bill dismissed.*