BLOOMING ROSE COAL COMPANY

*v.*

E. E. WHITE *et al.*

(CC 706)

*and*

BIG LAUREL COAL COMPANY

*v.*

SIEGEL WORKMAN *et al.*

(CC 707)

Submitted January 10, 1946.   Decided February 26, 1946.

*D. W. Taylor*, for plaintiffs.

*Mahan, Bacon & White*, for defendants.

RILEY, JUDGE:

The sufficiency of the answers in the causes of Blooming Rose Coal Company, a corporation, against White and others, and Big Laurel Coal Company, a corporation, against Workman and others, respectively, are here on certificates from the Circuit Court of Boone County, the demurrers thereto having been sustained.

Inasmuch as the pleadings are identical in essential details, and give rise to identical issues in these causes, and having been briefed and heard together, the recital of facts will be limited to those appearing in the pleadings in the Blooming Rose case.

The plaintiff, Blooming Rose Coal Company, a domestic corporation, brought its suit for the purpose of having a certain deed, bearing date December 15, 1937, from Wm. T. Lively, Special Receiver, to E. E. White, and certain derivative deeds and leases annulled, cancelled and set aside as clouds upon its title to certain lands acquired by it in 1902; and for the further purpose of requiring a disclosure on the part of defendants as to the amount and value of coal, timber, oil, gas and other products of said land which they have recovered, sold and disposed of, the amount of rentals received; and for general relief.

The Lively deed was attacked on the ground that it was authorized in a void proceeding instituted in 1935, by the Attorney General on behalf of the State under Code, 11-12-86, 87, to enforce payment of delinquent corporate charter taxes due the State for 1934. It also

appears in the bill that plaintiff's tax for the year 1934 was $45.00; that the property was sold at private sale for $187.67; and that, at the time of sale, it was carried on the land books of Boone County at a valuation of $36,245.00.

The answer sets up, among other things, that the property involved was sold to the State in 1931 for non-payment of the 1930 taxes; that since the last-mentioned date, plaintiff has failed and refused to have the property entered for taxation; that title to the lands "became and was vested in the State" in the manner provided by the Constitution and laws of the State and had been purchased by the State and become. "irredeemable and was not redeemed, released or otherwise disposed of" by the State "at the time of the acquisition of the title to said lands by the said E. E. White under the [Lively] deed".

Without admitting that the deed was void, the answer further avers that it "constituted, was and is color of title under which defendants and each of them claim the lands"; "that under and pursuant to said deed they did, on the ———— day of December, 1937, enter upon said lands and take possession thereof, and that they and each of them have had claim to and actual, continuous possession of said lands and every part thereof, under said color of title for the years 1938, 1939, 1940, 1941, 1942, 1943, 1944, and 1945 to the present time; and have paid all State and county taxes charged or chargeable thereon for each of said years and that therefore and as a result thereof and by virtue of the constitution and the statutes of the State of West Virginia, that the title to said lands theretofore vested in the State of West Virginia as hereinabove set forth, has become and now is vested in these defendants"; that plaintiff has not paid any of the taxes and has not been in actual or constructive possession of the lands during said period and is not now in the possession, use or occupancy of same; that defendants are therefore entitled to have said lands and title thereto adjudicated to them, free from "any claim

or demand or cloud, color or claim of title thereupon or thereto by plaintiff herein." It is further averred that defendants have paid all of the State and county taxes upon said lands and every part thereof "for the years 1930 to 1944, inclusive, which, including interest from the date of payment, amounts to the sum of $3681.75, together with the purchase price paid to Wm. T. Lively, Special Receiver, as set forth in said complaint, neither of which amounts the plaintiff has offered, tendered or agreed to repay to these defendants."

At the outset it must be noted that, under our decisions, the Lively deed is void (*State* v. *Kelly & Co.*, 127 W. Va. 418, 33 S. E. 2d 230; *Nicholas Land Co.* v. *Crowder*, 127 W. Va. 216, 32 S. E. 2d 563) ; and, that color of title may be based on such a deed. *Smith* v. *Casto*, 107 W. Va. 1, 148 S. E. 566.

The certified question is:

> "Whether the actual possession by the defendants of the real estate involved in this suit for more than five successive years after the year 1937 under the claim and color of title which was acquired by them by the sale and conveyance by William T. Lively as Special Receiver of the Circuit Court of Kanawha County, West Virginia, under decrees of said Court made and pronounced in a chancery suit therein pending in which the State of West Virginia was plaintiff, and payment by the said defendants of all of the State and County taxes upon said lands and every part thereof for the years 1930 to 1944, both inclusive, and the failure of the plaintiff to have the said lands properly assessed for taxes in its name for said years and its failure to pay any State and County taxes thereon for any of said years, operates to vest title to the said lands in the said defendants."

Does the answer set up a hostile title under Section 3, Article XIII, West Virginia Constitution? The pertinent portion of said section provides that "All title to lands in this State * * * purchased by it and become

irredeemable, not redeemed, released or otherwise disposed of, vested and remaining in this State, shall be, and is hereby transferred to and vested in" any one of three classes of persons, the third being any person "(other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees)", who "shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for said period."

When we read the answer, especially in the light of defendants' briefs, we are confronted with the matter of "redemption". If defendants redeemed the delinquent land from the State, they could acquire no title under the provisions of the section of the Constitution referred to above; and, further the payment of taxes would, in the instant case, inure to the benefit of the plaintiff as the former owner. *Sturm* v. *Fleming*, 26 W. Va. 54.

Several temporary acts providing for an extension of the period provided for in the Code for redemption of lands sold for and purchased by the State for non-payment of taxes, were passed by our Legislature during the period 1932 to 1939, inclusive. Section 1, Chapter 17, Acts of the Legislature, Extraordinary Session, 1932, was held unconstitutional in so far as it attempted to extend the redemption period in cases of purchases by an individual. *Milkint* v. *McNeeley, Clerk*, 113 W. Va. 804, 169 S. E. 790; *Lemley* v. *Phillips*, 113 W. Va. 812, 168 S. E. 789. Chapter 10, Acts, First Extraordinary Session, 1936, extended the time of redemption where property had been purchased by the State to June 30, 1937; and, again, by Chapter 61, Acts, Legislature, 1939, effective from March 2, 1939, the Legislature extended the redemption period against the State to June 30, 1939.

The last-mentioned act provides: "Notwithstanding the provisions" of the Code and other statutes "the auditor of the state of West Virginia shall permit the pre-

vious owner of any real estate * * * sold for the non-payment of taxes assessed and levied thereon and purchased for the state * * * to redeem such real estate, provided application to redeem shall be made on or before the thirtieth day of June, one thousand nine hundred thirty-nine, by paying to the auditor * * * the amount of all state, county, school district, and other district taxes and all municipal corporation taxes, including such taxes as were or should have been assessed thereon for the year in which the same was sold to the state * * *." Such statutes providing for an extension of time for the redemption of real estate forfeited or sold to the State for nonpayment of taxes and purchased for the State are constitutional. *Waggoner* v. *Wolf*, 28 W. Va. 820.

It is to be noted that from June 30, 1937, the last day upon which redemption was required to be made under Chapter 10, Acts, First Extraordinary Session, 1936, and on March 2, 1939, the effective date of Chapter 61, Acts of the Legislature, 1939, which provided a further extension to June 30, 1939, there was a period of hiatus during which property purchased by the State and held by it could not be redeemed. But, defendants in their briefs say that they have redeemed their property, and, although as heretofore stated, the answer sets forth the payment of taxes for the years 1930 to 1944, inclusive, no definite date is stated in the answer as to when these taxes were paid. Of course, if the taxes were paid during one of the periods of extension that of itself would constitute a redemption which would inure to the benefit of the former owner, in which event Article XIII, Section 3 of the Constitution would not serve to vest title in defendants. However, when, as alleged in defendants' answer, they entered on the land on the ——— day of December, 1937, the property could not be redeemed either at the time of such entry or on January 1, 1938, the beginning of the year in which defendants contend they began to pay taxes for the purpose of having title vested in them under Constitution, Article XIII,

Section 3, because of the evident hiatus between the extension periods provided by the statutes. But in view of the position taken in defendants' briefs that "They had likewise redeemed such lands from the State for all taxes assessed or chargeable thereon for the years 1930 to 1937, inclusive", and the specific allegations in the answer to the effect that defendants paid taxes for the years 1930 to 1944, inclusive, we must assume that the payments were regularly made at a time when redemption would be effective, that is some time prior to June 30, 1939, the last extension date provided by Chapter 61, Acts, 1939. We are prompted to take this position under the rule applicable in law actions that a pleading, if subject to two intendments, will be construed most strongly against the pleader. *White* v. *City of Charleston*, 98 W. Va. 143, 150, 126 S. E. 705; *Rine* v. *Morris*, 99 W. Va. 52, 127 S. E. 908; *United Shoe Repairing Machine Co.* v. *Carney*, 116 W. Va. 224, 227, 179 S. E. 813; 1 Chitty on Pleadings, 16th Am. ed. 700. The rule likewise is applicable to a pleading in a suit in equity. *Brecker* v. *Brecker*, 122 W. Va. 120, 8 S. E. 2d 522. Defendants, in our opinion, obtained no vested right by proceeding to comply with the provisions of Section 3, Article XIII of the Constitution. The right of redemption is not provided for in Constitution. In *Bank of Quinwood* v. *Becker*, 119 W. Va. 534, 194 S. E. 849, this Court held that such right is "created by statute and is an act of grace on the part of the state, which the Legislature has the power to destroy, but which, so long as it exists, the courts will protect." So when defendants entered on the land for the purpose of obtaining title under the Constitution, they did so with the risk that the Legislature with its inherent right to legislate as to redemption of lands purchased for the State could, as it did in 1939, make lands then vested in the State by purchase for nonpayment of taxes and irredeemable, again redeemable. A partial compliance with the Constitution, Article XIII, Section 3, in our opinion, will not suffice. A proper interpretation of this article of the Constitution, we think, requires "claim to and actual

continuous possession of, under color of title" and the lands must remain in the State irredeemable during all of such period. Such situation did not prevail in this case.

· We are of the opinion that when defendants paid the taxes on the lands involved for the years for which the same were sold to and purchased by the State of West Virginia, and the subsequent taxes up to and including the year 1937, that they were paid on a title which was in privity with that held by the defendants at that time under their deeds from Wm. T. Lively, Receiver, and that such payment inured to the benefit of the true owner of the land. When these taxes were so paid, it operated as a redemption from the State of the title acquired by it in the sale and purchase of the land aforesaid, and thereafter the State had no title thereto which could be made the subject of a transfer under the provisions of Section 3 of Article XIII of the Constitution of this State. That section of the Constitution is based entirely upon the theory of a transfer from the State to a person who had acquired a right thereto by reason of possession and payment of taxes under claim or color of title. It is clear, of course, that there cannot be a transfer of a thing which is not in existence. After the redemption, which we think was made, the State had no title and, therefore, could transfer no title under Section 3, Article XIII of the Constitution. This leads to the inescapable conclusion that however long the defendants may have paid taxes on the lands involved, after they acquired a supposed claim of title from the Receiver, they never acquired any title from the State.

In our opinion, the titles to the properties, involved in both suits, in controversy never vested in defendants therein, and we so answer the certified question.

*Rulings Affirmed.*