THE BAIRD-GATZMER CORPORATION

*v.*

HENRY CLAY COAL MINING CO., *et al.*

(CC 739)

Submitted September 2, 1948.  Decided November 23, 1948.

*Kump, Kump & Wooddell,* and *W. Holt Wooddell* and *Scherer, Bowers & File* and *W. H. File,* for plaintiff.

*H. Gus Muntzing, David E. Cuppett, Jr.,* and *Haymond Maxwell, Sr.,* for defendants.

Fox, JUDGE:

This is a suit in chancery, in the Circuit Court of Grant County of The Baird-Gatzmer Corporation, a corporation, against Henry Clay Coal Mining Company, a corporation, and others, in which the plaintiff seeks to have set aside certain deeds conveying approximately 5,256 acres of land, situated in Grant and Tucker Counties, the first of which was a deed from William T. Lively, Special Receiver, to Henry Clay Coal Mining Company, a corpora-

tion, dated February 16, 1946, and subsequent deeds for the same land, on grounds set up in the bill. There was a demurrer to the bill, which the trial court sustained, and certified certain questions involved in such decision to this Court. On May 17, 1948, on application of the plaintiff, we docketed the case for hearing on such certification.

According to the allegations of the bill, the plaintiff corporation was chartered by this State on May 2, 1934, and on June 9, 1934, there was conveyed to it, by W. T. O'Farrell, Special Commissioner, and Richard C. Bull, Trustee, tracts of 3,481, 1,150, 335, 169⅓, and 120⅔ acres of land, aggregating 5,256 acres, situated in Grant and Tucker Counties, principally in Union District of Grant County, but partly in Davis District of Tucker County. This deed was recorded in Grant County, and the land conveyed thereby appeared on the land book of that county for the year 1935. The taxes for the year 1935 were not paid, and the land was subsequently sold for non-payment of said taxes, and purchased by the State of West Virginia, and not redeemed within the time required by law, and the title thereto became vested in the State of West Virginia, subject to the right of redemption, as provided by the statute then in force.

The bill further alleges that the plaintiff corporation did not pay the annual charter license taxes for the fiscal year beginning July, 1935, and its charter became subject to forfeiture under the provisions of Article 12 of Chapter 11 of the Code; that on August 11, 1936, a suit was instituted in the Circuit Court of Kanawha County against the plaintiff and numerous other delinquent domestic and foreign corporations to collect unpaid license taxes. That this suit was prosecuted in the name of the State v. Active Ad Sign Company, and others, including The Baird-Gatzmer Corporation; that process in the said cause was not issued from the office of the Clerk of the Circuit Court of Kanawha County, was not signed by the said Clerk, or by any one for him, but was issued by some one not identified, on printed form, which included the printed signature of the clerk; that service of the said purported process

was accepted by Edgar B. Sims, Auditor of the State of West Virginia, and statutory attorney in fact for the plaintiff corporation, on the 11th day of August, 1936, the date of its alleged issuance, and such process was made returnable to the September Rules, 1936, at which rules the bill was filed and there was a decree nisi; that at October Rules, 1936, the bill was taken for confessed by all defendants not appearing, including the plaintiff herein, and the cause would in natural course have been matured for hearing at the next term of the Circuit Court of said county which convened on the second Monday in January, 1937; that notwithstanding this situation, the said Circuit Court, on November 16, 1936, entered a decree in said cause against the plaintiff for the sum of $25.00, and its proportionate share of the costs of the suit, forfeited its charter, enjoined it from carrying on business as a corporation, and appointed William T. Lively its special receiver, with authority to convert its assets into cash for the purpose of paying its debts, and authorized him to take into his possession the property of the said corporation, and to sell the same at public or private sale.

Nothing more was done in the cause until February 11, 1946, a period of more than nine years. On that day, W. T. Lively, special receiver, filed a report in writing to the effect that he could sell the assets of the plaintiff herein consisting solely of the 5,256 acres of land, aforesaid, for the sum of $310.32, the purchaser to assume payment of the property taxes thereon then unpaid, the alleged amount being several thousand dollars. In said report it was stated that the price at which the assets of the said corporation could be sold was less than five hundred dollars. The bill and exhibits in the cause show that plaintiff corporation paid for said property in June, 1934, the sum of $7,608.00. On this report the court ordered said sale made unless the Baird-Gatzmer Corporation, a corporation, should, on or before February 16, 1946, five days later, pay all liens against all said assets, and its proportionate share of the costs of the suit. The bill avers that the plaintiff had no notice of the existence of the said

suit until after its property had been sold, and, therefore, the payment required by the order, aforesaid, was not made. On February 16, 1946, said special receiver reported the sale of the assets of the plaintiff corporation, consisting of the lands aforesaid, to the defendant, Henry Clay Coal Mining Company, a corporation, for the sum of $310.32, which was then paid to him, and the sale was confirmed on said day, and the purchase price was ordered to be distributed as follows: Costs, receiver's bond —$16.67; M. H. Hix, Clerk of the Circuit Court of Kanawha County—$15.15; Ira J. Partlow, Attorney General of the State—$10.00; Edgar B. Sims, State Auditor—$25.00; William T. Lively, Special Receiver, for preparing deed —$10.00; William T. Lively, Receiver's fees, etc.—$125.00; William T. Lively, investigation fee—$108.50; aggregating $310.32. On the same day an order was entered showing the distribution of the funds aforesaid, and a report of such disbursement was approved on the same day the sale, aforesaid, was confirmed, and the suit was dismissed as to The Baird-Gatzmer Corporation, the plaintiff herein. On the same date a deed was executed by the said special receiver conveying said land to Henry Clay Coal Mining Company.

Subsequent to the conveyance made to the Henry Clay Coal Mining Company, a corporation, the land conveyed thereby was redeemed by said corporation from the State of West Virginia, by the payment of the taxes for the year 1935, and subsequent years, to the State Auditor in the sum of $1,644.67, so that the total outlay of the Henry Clay Coal Mining Company, the purchaser of said land, was $1,954.94, which amount plaintiff herein offers to pay in the event it is granted the relief prayed for herein.

On April 2, 1946, the Henry Clay Coal Mining Company conveyed the said lands to one Alfred K. Althouse, who later conveyed the same to the Upper Elk and Potomac Coal Corporation, by deed dated January 3, 1947. It is alleged in the bill that Alfred K. Althouse was an officer of, and the principal stockholder in the Henry Clay Coal Mining Company, and the Upper Elk and Potomac Coal

Corporation, and that said Althouse is the main party in interest, and, in effect, is the owner of the land conveyed, or the major portion thereof.

The bill in this cause was apparently filed at March Rules, 1947, and on April 1, 1947, defendants filed their joint demurrer, assigning twenty grounds therefor. It would serve no useful purpose to enumerate all of these grounds, but we think they may be summarized in stating them as follows: (1) That the plaintiff was without legal title to the property involved by reason of the fact of the sale of the same by the Sheriff of Grant County, its purchase by the State of West Virginia, and the failure to redeem the same within the time required by law, and that, therefore, it was not entitled to maintain the suit; (2) that the proceedings in the Circuit Court of Kanawha County, by which the defendant, Henry Clay Coal Mining Company, acquired title to the land involved, could not be collaterally attacked, and that the sale made therein, being a judicial sale, could not be set aside; (3) that if there was any fraud in the case, the defendants were strangers thereto; (4) that plaintiff's remedy for relief, if any it had, should be asserted in the Circuit Court of Kanawha County; (5) that the acceptance of process in the suit in the Circuit Court of Kanawha County, under attack, was legal; and (6) that the process in the case, if defective, was only voidable, and could only be assailed or corrected in the Circuit Court of Kanawha County.

The court on consideration of this demurrer entered an order on March 15, 1948, sustaining the same and with said order filed a written opinion stating the grounds for its holding, and summarizes its conclusions and holding in the language following. "Accordingly the court holds: (1) that the original proceeding for the collection of the corporate license fee, and the forfeiture of the charter of Baird-Gatzmer Corporation is null and void, and may be collaterally attacked, unless for other reason prevented; (2) That the plaintiff does not have clear legal title to the property involved in this case because the same

was delinquent for taxes for many years, apparently more than the constitutional requirement to forfeit the land to the state and vest the title thereof in the state. That as a result the plaintiff cannot maintain this suit to quiet title; (3) That the purpose of chapter 145 of the Legislature of 1945 was to stabilize titles to real estate after the decision in the Nicholas land case, and that the broad intent of that enactment was to vest good title in the purchaser; and (4) That the plaintiff has been guilty of laches, which amounted to abandonment of said real estate for more than ten years. During that time one of the defendants purchased for value in good faith. Should its rights not be protected?"

We have not been able to find anything in the demurrer aforesaid, that raises the question referred to in the opinion of the court as to the purpose of Chapter 145, Acts of the Legislature, 1945; but in the argument and briefs on this certification that point is raised and strongly relied upon, and will receive consideration further on in this opinion.

We think the substantial questions involved in this case are: (1) Whether there was any legal process in the case of the State of West Virginia v. Active Ad Sign Co., the suit in which the defendants herein had acquired title to the land claimed by them; (2) if there was legal process issued in that case, was the acceptance thereof by the Auditor of the State, acting as attorney in fact for the plaintiff corporation herein, valid and legal; (3) whether the failure of the plaintiff corporation herein to pay taxes on the land owned by it for the year 1935, and thereafter, and the sale of said land for taxes by the Sheriff of Grant County, and the failure to redeem the same therefrom, operated to deprive the plaintiff herein of the right to maintain this suit on the ground of having no title to the said land; and (4) whether the amendment to Article 12, Chapter 11 of the Code by reenacting Section 86 thereof, and adding thereto a new section to be designated as 86-a, operated to validate the sale made to Henry Clay Coal Mining Company by William T. Lively, receiver, on Feb-

ruary 16, 1946. These points will be considered in the order stated.

The first point made by the plaintiff that no legal process was issued in the 1936 suit, aforesaid, is covered by the holding of this Court in *Nicholas Land Co.* v. *Crowder*, 127 W. Va. 216, 32 S. E. (2d) 563, wherein it was held that: "A summons which is not signed by the clerk or deputy clerk of the court from which it emanates is voidable, and in the absence of timely avoidance thereof a decree by default based thereon is not subject to collateral attack." and: "A writ commencing a suit must be issued by the clerk or deputy clerk of the court wherein the suit is instituted and a process not so issued is void." We do not think it necessary to comment further on this point. The question whether the allegations of the bill, with respect to the manner in which the issuance of process was attempted or perhaps affected, are correct, remains to be determined, on a full hearing of the cause.

The next point raised relates to the admitted fact that if a legal process was issued in the 1936 suit, service thereof was accepted by Edgar B. Sims, Auditor of the State, and, as such statutory attorney in fact for the defendant therein, The Baird-Gatzmer Corporation. We do not consider this point to be an open question in this State. In *Nicholas Land Co.* v. *Crowder, supra,* we expressly held that such service of process or an acceptance thereof did not constitute due process of law as required by the XIV Amendment to the Constitution of the United States, and Article III, Section 10, of the Constitution of this State, and that the same was void. We followed that ruling in *State* v. *Kelly & Co.,* 127 W. Va. 418, 33 S. E. (2d) 230, and in *Coal Co.* v. *White,* 128 W. Va. 502, 37 S. E. (2d) 455. We see no reason why we should now depart therefrom. The ruling in the original case on the question, the *Nicholas Land Company* case, followed long deliberation, and with full appreciation of its consequences. If due process of law means anything, it means that a defendant is entitled to some character of notice before his rights may be effected by suits, actions or proceedings in courts of the

land, and that notice to the person or official who as plaintiff initiates the suit is, in all reason, no notice whatever. An official who instigates a suit, and whose duty it is to collect the money claimed therein, cannot be the real plaintiff, and at the same time the representative, agent or attorney in fact of the defendant. Such a proceeding shocks the conscience, and is contrary to all rules of fairness, and far beneath the standard of conduct which a sovereign state should set up and follow in dealing with its citizens. We think the fact that the process in the 1936 suit was accepted, on the part of The Baird-Gatzmer Corporation, by the State Auditor, made the whole proceeding, as to such corporation, void, and that by reason thereof, the Henry Clay Coal Mining Company acquired no title whatever to the land conveyed to it by William T. Lively, special receiver, under the authority of the Circuit Court of Kanawha County, by the decrees entered in said suit.

Taking up the third point, it is contended by the defendants herein, that at the date of the institution of this suit, plaintiff did not have title to the land in controversy, and, therefore, cannot maintain this suit. This position is taken on the basis of facts, apparently admitted, that the land involved herein was returned delinquent in the name of The Baird-Gatzmer Corporation, for the non-payment of taxes thereon for the year 1935, and thereafter sold by the Sheriff of Grant County, purchased by the State, and not redeemed, the effect of which would be to vest title to said land in the State of West Virginia, subject only to the right of redemption which the former owner had under the statutes then and now in force. It is true, of course, that the plaintiff therein could not maintain a suit of this character, so long as the title to the land involved remained in the State of West Virginia; but the bill alleges that, at the date of the institution of this suit, the said land had been redeemed from such delinquency by the Henry Clay Coal Mining Company, and under the law such redemption inured to the benefit of the true owner. The claim or title, if any, which the Henry Clay Coal Mining Company acquired under its deed from Lively, special

receiver, did not create a title, hostile to that of the former owner, The Baird-Gatzmer Corporation, but a title or claim to said lands in privity with that of The Baird-Gatzmer Corporation. The purchaser of land at a judicial sale holds any title he acquires thereby in privity with the title of the former owner. That proposition was settled in *Sturm* v. *Fleming*, 26 W. Va. 54, in which this Court held: "The payment of taxes on land by a purchaser thereof at a judicial sale, which is subsequently set aside and declared void, will be treated as a full satisfaction of all the taxes on such land for the time they shall have been so paid; and the owner of the land so sold will not forfeit his title thereto by reason of his not having had the land assessed and the taxes paid thereon in his name during the time the taxes were so paid by such purchaser." See also *Foggin* v. *Furbee*, 89 W. Va. 170, 109 S. E. 754. Therefore, the payment of taxes made by the purchaser in the 1946 sale, and the grantee in the deed from William T. Lively, special receiver, aforesaid, was a redemption of the said land, operating as a release or surrender of the State's title, and restoring it to the true owner of the land whoever he might be. Of course, the true owner is not entitled to enforce his rights in the land, if any, without first reimbursing the person who actually furnished the money with which redemption was made. The plaintiff in this cause offers to make such reimbursement, and should be required to do so.

This position is upheld by the case of *Coal Co.* v. *White, supra*. That was a case where the defendants had acquired a claim of title to certain real estate under a deed made by William T. Lively, special receiver to E. E. White, dated December 15, 1937. The land involved was sold to the State in 1931 for non-payment of 1930 taxes. It was contended that under the deed, aforesaid, grantees and those claiming under them paid the taxes on said land for the years 1938 to 1945, inclusive, and claimed to have had actual, continuous and exclusive possession of said land during such period, and the claim was that such payment of taxes and possession operated to transfer title to them under the provisions of Section 3, Article XIII of the Con-

stitution, and that even though the deed to E. E. White, aforesaid, may have been void in its inception, it constituted color of title within the meaning of the constitutional provisions aforesaid, and the basis of the possession establishing a new title. It was held in said case that: "Lands redeemed from the State by a former owner, or his actual or claimed successor in title, deprives the State of its title thereto, and the same cannot, on account of the sale or forfeiture from which such redemption is made, thereafter be the subject of a transfer of title made under the provisions of Section 3, Article XIII of the Constitution of this State." In that case there was involved a claim of a right of title under the transfer provision of the constitution. No such claim can be made in this case, because the deed under which defendants claim was not executed until February, 1946, and the redemption not being made until after that date, there could not possibly be any valid claim of transfer of title under the constitution. The claim made by the defendants herein is that the plaintiff herein had no title to the land involved by reason of the sale to the State and could not maintain this suit, losing sight of the fact that when the defendants herein, or one of them, redeemed said land, from the sale to the State, such redemption inured to the benefit of the true owner of the land, and the State's title passed to such true owner.

The fourth and final question is the effect of Chapter 145, Acts of the Legislature, 1945. The case of *Nicholas Land Co.* v. *Crowder, supra,* was decided on November 14, 1944. On March 7, 1945, presumably with such decision in mind, the Legislature enacted Chapter 24 of the Acts of the 1945 Session, by which Section 71, Article 1, Chapter 31 of the Code was amended, the effect of which was to substitute the Secretary of State for the Auditor, as attorney in fact in cases where suits or proceedings were instituted for license tax due the State, and in other cases where it became the duty of the Auditor to collect a debt or claim due the State. At the same session, and by Chapter 145, thereof, Section 86 of Article 12 of Chapter 11 of the Code was amended and Section 86-a was added and reads as follows: "No suit or proceeding shall be insti-

tuted in any court of this state on and after the first day of July, one thousand nine hundred forty-six, for the purpose of setting aside the sale of all or any of the assets of any corporation heretofore sold by order of the court in any former suit instituted under the preceding section on the ground that process was served on the auditor or that service thereof was accepted by him."

There would not seem to be foundation for any reasonable doubt as what was intended to be accomplished by this amendment. This Court held in *Nicholas Land Co.* v. *Crowder, supra,* that an acceptance of process by the State Auditor, in cases effected by such amendment did not constitute the service of process or notice, did not constitute due process of law, and was therefore unconstitutional, and that any proceeding based thereon was void. Doubtless the Legislature considered that many instances had occurred where sales of real estate had been made under decrees in cases of like character where process had been accepted by the Auditor, and, with full recognition of the force and effect of this Court's decision in the *Nicholas Land Company* case, felt that some limitation on the time within which suits could be instituted should be made, in order to settle titles, and for that reason required that such suits should be instituted not later than the first day of July, 1946, some sixteen months after the said enactment. Such enactment, and the purpose sought to be accomplished thereby is analogous to cases where statutes of limitation are changed, the effect of which might be to lessen the time within which a suit could be instituted. The right to make such changes is recognized, but, so far as we know, in all such instances, persons holding rights, as they existed at the time of such enactment, are given a reasonable time within which to assert such rights before the new statute could become effective as to them. Of course, the Legislature has the right to enact statutes of limitation so long as vested contract rights are not impaired, and had the right to make the amendment quoted above.

But, we are met by the contention, most vigorously urged, that we should in effect strike out the word "here-

tofore" as it appears in the said amendment and insert therein the word "theretofore". If we did so, then the section would mean that no suit could be instituted to set aside any such sale, provided, the same had been made before the first of July, 1946; and the further effect would be to make valid that which this Court, in the *Nicholas Land Company* case, held to be invalid and unconstitutional. Chapter 24 of the Acts of the 1945 Session, had, to the extent provided therein, substituted the Secretary of State for the Auditor as attorney in fact for delinquent corporations, and that evidenced the policy and intention of the Legislature, namely: that thereafter process in suits to collect corporation license could not be accepted by the Auditor. The contention made that sales prior to July, 1946, were validated under said act would mean that subsequent to enactment of Chapter 24, aforesaid, sales could still be made in suits where the process had been accepted by the Auditor. This creates a far-reaching inconsistency which it seems to us the Legislature never intended. Furthermore, if the acceptance by the Auditor, prior to the enactment of the 1945 statute, was unconstitutional and void, and the act of the Legislature permitting the same was unconstitutional, how could the Legislature thereafter provide that a sale made under such service of process or an acceptance by the Auditor could be validated and made effective. If such acceptance was unconstitutional and void prior to the 1945 statute, it was void after it was enacted. Even if the Legislature had intended to validate sales made prior to July 1, 1946, its attempt to do so would have failed because it did not have the constitutional power to make such intent effective.

This and other courts will always endeavor to give effect to what they consider the Legislative intent; but, we do not change plain and simple language employed in framing a statute unless there is an impelling reason for so doing. We see no basis for any such change in this case. The whole situation appears to us clearly to suggest that when the Legislature used the word "heretofore", it used the exact word it intended to use for the purposes it had in

mind, namely, to conform to the then recent decision of this Court, as evidenced by its action in enacting Chapter 24, aforesaid, and then to place a restriction upon the right of former owners of property to bring suits based upon what the Court had held to be an improper and unconstitutional practice.

The trial court in its opinion speaks of laches. There is no basis for the assertion of laches in this case. The long period of time from 1935 to 1947, during which time taxes were allowed to accumulate on the land involved herein, can not be used by defendants herein to justify the charge of laches as against the plaintiff. They did not become interested in this property until February, 1946, about one year before this suit was instituted. There being no apparent change in the situation of the parties since the defendants acquired their interest in the land involved, there would appear to be no basis for any assertion of laches in their favor as against the plaintiff, and the court was in error when it gave consideration to this factor in the case; and also, when it gave consideration to the theory that plaintiff herein had abandoned the property here involved. We know of no authority for the theory of abandonment merely because a property owner fails to pay his taxes.

There is no merit in the contention of the defendants that the relief to which plaintiff may be entitled, can be obtained only in a suit in the Circuit Court of Kanawha County, in which court the proceedings under attack were had. This is a suit to remove cloud on the title to land alleged by the plaintiff to be owned by it. The situs of the land involved determines the venue of such a suit. "A suit to remove cloud and quiet title is local in its nature, and the jurisdiction of the Court is determined by the situs of the land." *Tennant's Heirs* v. *Fretts*, 67 W. Va. 569, 68 S. E. 387. See also *Wayland Oil & Gas Co.* v. *Rummel, Judge*, 78 W. Va. 196, 88 S. E. 741; *Wirgman* v. *Life and Trust Co.*, 79 W. Va. 562, 92 S. E. 415; *Life* v. *Development Company*, 107 W. Va. 33, 147 S. E. 31. Nor is there merit in the claim that the defendants were strangers to the

fraud alleged to have been committed in connection with the sale under attack. Defendants are claiming the benefit of the alleged fraud, which is the equivalent of a direct participation therein. Nor in the contention that the proceedings in the Circuit Court of Kanawha County, under which defendants rely for their title to the land involved, cannot be collaterally attacked. If such proceedings were, as we hold, absolutely void, they may be attacked in any proper forum directly or collaterally.

One other matter seems to call for consideration. The bill and exhibits show that in 1934 plaintiff herein acquired title to the 5,256 acres of land here involved at the price of $7,608.00, and the bill alleges that the present value of the property is $25,000.00. The special receiver's report to the Circuit Court of Kanawha County led that court to believe that said lands were worth less than $500.00, and by such report induced the said court to confirm a sale thereof at the price of $310.32, which was paid to the special receiver. Out of the said sum, the costs of the suit were paid, as was the $25.00 license tax for the year 1935, which was the basis of the suit. The entire remaining amount, $243.50, was retained by the special receiver. We have no inclination to comment on this showing; but we can not refrain from saying that it shocks the conscience. In our opinion, the trial court should consider whether this showing alone is not sufficient to justify the setting aside of this sale for what was, at the very least, constructive fraud, and whether or not it did not make absolutely void the sale under which the defendants claim herein. The processes of our courts should never be used to impose flagrant injustices of this character upon the owners of property in this State.

The demurrer of the defendants to the plaintiff's bill should have been overruled. Therefore, the rulings of the Circuit Court of Grant County are reversed, and the cause remanded for further proceeding.

*Ruling reversed;*
*cause remanded.*