STATE OF WEST VIRGINIA, BY J. HORNOR DAVIS, *etc.*

*v.*

E. E. SIMMONS, *et al.*

(CC772)

Submitted September 3, 1950.  Decided January 23, 1951.

Fox, JUDGE, dissents.

GIVENS, JUDGE, not participating.

*J. Horner Davis, II, John C. Vance, Wm. T. Homburg,* for plaintiff.

*J. Edward Litz, B. J. Pettigrew, Jr.,* for defendants.

HAYMOND, JUDGE:

This suit was instituted, under the provisions of Chapter 160, Acts of the Legislature, 1947, Regular Session, on November 22, 1948, in the Circuit Court of Kanawha County, by the plaintiff, State of West Virginia, by J. Horner Davis, 2nd, Deputy Commissioner of Forfeited and Delinquent Lands for that county, against E. E.

Simmons and forty six other named defendants and all unknown parties and persons who have or claim an interest in the lands included and proceeded against in the suit, to sell for the benefit of the school fund tracts or parcels of land which have been forfeited or sold to the State for taxes.

Among the lands proceeded against in the suit is a lot, 25 feet by 50 feet in dimensions, located on Elk Two Mile Creek, Elk District, Kanawha County, assessed for taxes in the name of Lloyd Cottrell, one of the named defendants, for the year 1945. This lot was returned delinquent for the nonpayment of taxes for that year, was not redeemed, was regularly sold by the Sheriff of Kanawha County on December 9, 1946, and purchased by the State of West Virginia. By deed dated June 14, 1947, and recorded June 16, 1947, Cottrell conveyed with general warranty the lot to Sherman Drake. The taxes on this land were paid for the years 1946, 1947 and 1948, but it was not redeemed from the sale to the State for the taxes for 1945. It became irredeemable on June 8, 1948, and on September 22, 1948, was certified by the Auditor to the Circuit Court of Kanawha County and to the Deputy Commissioner of Forfeited and Delinquent Lands for that county to be proceeded against for the benefit of the school fund.

The bill of complaint alleges that all lands involved in the suit are subject to sale, lists the various lands, states their certification numbers, the year in which each tract or parcel was forfeited or sold to the State, the respective years of nonentry and forfeiture or delinquency and sale, the names of the former owner or owners of each, the names of all other persons who, according to the knowledge of the Deputy Commissioner, have or claim an interest in such lands, the quantity, the location, and a general description of such lands, and the total amount of taxes, interest and costs due on each, and, as to numerous lots or tracts, refers to the source of title of the former owner. It contains allegations of the character just indicated with respect to the lot listed in the name of Cott-

rell and identifies it as Item No. 6 and Certification No. 5415. It also contains, among others, an allegation that all persons who, within the knowledge of the Deputy Commissioner, have or claim an interest in any of the lands involved, have been made defendants, and that the Deputy Commissioner knows of no other persons who have or claim an interest in such lands except the persons named as defendants, but that there may be other persons who have or claim such interest. The bill of complaint prays that all unknown parties and claimants who are or may be interested in any of the lands proceeded against be made defendants, that all right, title and interest of all unknown parties and claimants who fail to appear and defend their rights shall be forever foreclosed and held for naught; that an order of publication be awarded as to all unknown parties and claimants who are or may be interested in any of the lands proceeded against; that a guardian *ad litem* be appointed for any infant defendant; that the court find and adjudicate that the lands proceeded against are irredeemable, that title to such lands is vested absolutely in the State, and that each lot or tract of land is subject to sale for the benefit of the school fund; that a decree of reference be entered whenever by the court deemed proper; that dismissal of the suit as to any lot or tract of land be permitted upon proper application and proper grounds; that a decree be entered authorizing and directing that each lot or tract proceeded against be sold for the benefit of the school fund; that the proceeds derived from the sale of such lands be disbursed as provided by law and that the rights of the respective defendants in and to any excess remaining of the purchase money received from the sale of such lands be adjudicated and determined; and that the plaintiff be granted such other, further, and general relief as may be proper.

Process was issued against all the named defendants, returnable to December Rules, 1948, but no process was personally served upon the defendant Cottrell. Drake was not named as a defendant and no process was issued as to him. The bill of complaint was filed at December

Rules, 1948. Previously, on November 2, 1948, an order of publication, containing the information set forth in the bill of complaint relative to the lands proceeded against, was awarded against all named defendants and all unknown parties who have or claim an interest in such lands. The order of publication set forth the object of the suit and required all named defendants and all unknown parties and claimants to appear within one month from the date of its first publication and do what is necessary to protect their interests. It was duly executed by publication upon all persons against whom it was awarded, including Cottrell as a named defendant and Drake, who was proceeded against as an unknown party and claimant of an interest in the lands embraced in the suit.

By decree entered April 5, 1949, the court ordered a sale of the lot proceeded against in the name of the defendant Cottrell and twenty two other lots or tracts, by the Deputy Commissioner, at public auction, on April 25, 1949, at which time, after proper notice, the lot was sold to the highest bidder for cash and purchased by Mayford E. Summers for $5.00. By a subsequest decree, entered June 2, 1949, the sale was confirmed and the Deputy Commissioner was directed to execute and deliver a proper deed to the purchaser; and, all matters involved having been determined, this suit was retired from the docket of the court. The deed was made on June 6, 1949, and recorded on June 14, 1949. All the foregoing proceedings were had in the suit before any appearance was made by Cottrell or Drake; and during the pendency of the suit the Legislature enacted Chapter 134, Acts of the Legislature, 1949, Regular Session, effective March 11, 1949, which amended Section 12, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, the section in effect when this suit was instituted in November, 1948.

On October 22, 1949, after due notice, Cottrell and Drake appeared and tendered for filing their petition to reopen the case, to vacate the decrees formerly entered,

to set aside the deed of June 6, 1949, by the Deputy Commissioner to Summers, as a cloud upon the title of the petitioners, and to permit them to redeem the lot conveyed by that deed. The court, by decree entered on that day, permitted the petition to be filed and reopened the case. The petition, after alleging the same facts stated in the bill of complaint relative to the delinquency of the lot assessed for taxes in the name of Cottrell, avers that the petitioner Drake, after having been advised by an attorney at law that the taxes assessed against the lot were not delinquent and that the title was marketable, had purchased the lot and obtained a deed, with covenants of general warranty, from Cottrell; that between July and September, 1947, he constructed a dwelling house on the lot at a cost of approximately $3,500.00, in which he has resided since its completion; that in August, 1949, Mayford E. Summers informed him that Summers had purchased the property at a school land sale and demanded that the petitioner vacate and deliver possession to him; that the petitioner then investigated the situation and for the first time learned of the proceedings in this suit. The petitioners complain of the failure of the plaintiff to serve the defendant Cottrell personally with process and to name Drake as a defendant. The petition also avers that Drake had been the record owner of the property for more than sixteen months before the institution of this suit and his interest could have been ascertained from a cursory examination of the records in the office of the county clerk; that Cottrell has been a life long resident of West Virginia and of Kanawha County since 1925, and since then has been engaged in business as a tree surgeon and is widely known in Charleston and its environs; and that he has resided at a designated address in Charleston during the past six years. The petition further avers that neither petitioner had any personal knowledge of the pendency of, or made any prior appearance in, this suit; that they later learned of the proceedings had; that in a suit to sell forfeited and delinquent lands for the benefit of the School Fund, under Section 12, Article 4, Chapter 160, Acts of the Legislature,

1947, Regular Session, service of the summons must be had upon named defendants in the manner provided by law for service of process in other chancery suits; and that, as the named defendant Cottrell was a resident of Kanawha County and within the jurisdiction of the court, it was necessary to serve him personally with process in this suit. The petitioners state that they are ready, able and willing to pay all delinquent taxes against the lot sold to Summers and all fees and costs properly chargeable against it and now offer to pay such taxes, fees and costs into court.

The prayer of the petition is that it be filed and this suit reopened; that the Deputy Commissioner and Summers, the purchaser, be required to appear and answer the petition; that the decrees authorizing and confirming the sale of the lot proceeded against be vacated, in so far as they affect such lot; that the deed which conveyed it to the purchaser be set aside as a cloud upon the title of the petitioners; that petitioners be permitted to redeem the lot in this suit; and that they be granted general relief.

To the petition the plaintiff filed its written demurrer in which it assigned four separate grounds. The circuit court overruled the demurrer and on its own motion certified its ruling to this Court.

The questions arising upon the demurrer to the petition and certified by the circuit court are:

1. Whether in a suit instituted by the State under the provisions of Chapter 160, Acts of the Legislature, 1947, for the purpose of selling, for the benefit of the school fund, lands which have been forfeited or sold to the State for taxes, the former owner of any such land, who, at the time of the institution of such suit, is a resident of the county in which such land is situated, may be proceeded against by order of publication naming such former owner and giving a local description of the land sought to be sold by the State.

2. Whether in a suit so instituted for such purpose,

persons having or claiming any interest in such land, as disclosed by the public records and persons, other than the former owner, in possession of such land, may be proceeded against by an order of publication as unknown defendants.

3. Whether in a suit so instituted for such purpose, failure to effect personal service on the former owner or a person having or claiming any interest in such land, as disclosed by the public records, or a person in possession of such land, who, at the time of the institution of such suit, is a resident of the county in which such land is situated, is cured by the provisions of Chapter 134, Acts of the Legislature, 1949.

4. Whether Chapter 134, Acts of the Legislature, 1949, violates Article VI, Section 30, of the Constitution of West Virginia, because the object embraced in the act is not expressed in its title.

5. Whether Chapter 134, Acts of the Legislature, 1949, is invalid because of the alleged omission from that act of a suitable enacting clause.

Section 12, Article 4, Chapter 160, Acts of the Legislature, 1947, Regular Session, specifies the form of the summons in a suit to sell forfeited and delinquent lands for the benefit of the school fund and contains, among others, these provisions:

"The summons shall be served on the named defendants in the manner provided by law for the service of process in other chancery suits. * * *.

"The clerk of the circuit court shall at the same time that he issues such summons enter an order of publication, without the filing of any affidavit by the deputy commissioner as required in other cases. Such order of publication shall give the style of the suit, as, State of West Virginia v. A. B., et al.; shall state that the object of the suit is to obtain a decree of the circuit court ordering the sale for the benefit of the school fund of all lands included in the suit; shall list all such lands, setting forth

as to each item its local description, the former owner in whose name the land was forfeited, or was returned delinquent and sold, or escheated, as the case may be, and the names of such other defendants as may be interested therein; and shall require all the named defendants, and all unknown parties who are or may be interested in any of the lands included in the suit to appear within one month after the date of the first publication thereof and do what is necessary to protect their interests. * * *.

"In view of the fact that the state has absolute title to all forfeited land, to all land sold to the state for nonpayment of taxes and become irredeemable, to all escheated land, and to all waste and unappropriated land, and must under the constitution have such an absolute title before the land may be sold for the benefit of the school fund; and in view of the fact that the former owner of any such land, or any person claiming under him, has no further interest therein nor rights in respects thereto except such privilege of redemption as may be extended to him by the Legislature as an act of grace; and in view of the further fact that all parties known and unknown who may claim an interest in any of the lands included in the suit are given notice thereof by the order of publication provided for above; therefore, the Legislature deems it both expedient and necessary to provide that failure to name any such person as a defendant, or failure to serve the summons on any named defendant, shall in no wise affect the validity of any of the proceedings in the suit for the sale of the state's title to such land."

Other sections of the statute, Chapter 160, Acts of the Legislature, 1947, Regular Session, pertinent to the issues in this case, should be mentioned. Section 8, Article 3, gives the right to redeem within eighteen months from the time the land is purchased by the State and declares that after the expiration of the period for redemption the land shall be irredeemable. Section 18, Article 4, permits redemption of the lands proceeded against before confirmation of sale. Section 19, Article 4, provides that any person substantially interested may appear, at any

time before sale and move for dismissal upon certain specified grounds. Section 28, Article 4, protects the right of the former owner to the surplus. Section 30, Article 4, deals with the right of a person, under Section 19, who is not aware of the suit before sale of the land, to apply for an order to vacate the sale before it is confirmed. Other sections of Article 4 relate to the right of persons under disability to redeem the land, to reports required to be made, and to the disposition of the proceeds of sale.

The constitutionality of the provisions of the statute, Chapter 160, Acts of the Legislature, 1947, Regular Session, was questioned and determined in two recent decisions of this Court, and except the provisions of Section 34, Article 4, relating to the period of redemption for persons under disability, the validity of various sections of the act was upheld and sustained and their provisions were held not to contravene the limitations of the Constitution of the United States or of the Constitution of this State, and not to violate the requirements of due process of law. *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174; *State* v. *Gray*, 132 W. Va. 472, 52 S. E. 2d 759.

In the opinion in the *Blevins* case, a suit under the statute to sell forfeited and delinquent lands, this Court said: "This is not a suit between private parties, but is a suit in equity so designated by the statute. It is authorized by the provisions of Section 4, Article XIII of the Constitution of this State, and has for its purpose the sale of lands belonging to the State, forfeited for nonentry, or sold to the State as being delinquent for the nonpayment of taxes. Section 4, Article XIII, directs that the five classes of land hereinabove mentioned, owned by the State and irredeemable, shall be sold in a proceeding in the circuit court of the county where the land is situate. The right of entry by warrant being prohibited by Section 2, Article XIII of the Constitution, the State has no way to dispose of land of the classes mentioned in Section 4, Article XIII, other than by a proceeding in the circuit court. It is to be observed that the proceedings are not defined in the Constitution, nor does any provision

of Article XIII characterize the proceedings as being in law, in equity, *in personam, in rem, inter partes,* or *ex parte.*

"The statutes heretofore enacted pursuant to the State Constitution made such proceedings a suit *in personam* and *inter partes.* But we think that under the statute here considered the suit is a proceeding *inter partes,* and substantially one *in rem.* See 3 Freeman on Judgments, 5th Ed., Sections 1517 and 1524.

"Proceedings to sell land for the collection of taxes rest on grounds different from those on which proceedings between private parties rest. In discussing remedies for the collection of taxes, an eminent author said: 'Very summary remedies have been allowed, in every age and country, for the collection by the government of its revenue. *. * * The protective principles of the common law are not supposed to be violated by a resort to summary proceedings in these cases. (But) Summary processes are not necessarily unjust. * * * There is a tacit condition annexed to the ownership of property that it shall contribute to the public revenue in such mode and proportion as the legislative will shall direct. * * *.' 3 Cooley, Taxation, 4th Ed., Section 1326. In Section 1405 of the same work the author stated: 'Proceedings of this nature are not usually proceedings against parties, nor, in the case of lands or interest in lands belonging to persons unknown, can they be. They are proceedings which have regard to the land itself rather than to the owners of the land, and if the owners are named in the proceedings and personal notice is provided for, it is rather from tenderness to their interests, and in order to make sure that the opportunity for a hearing is not lost to them, than from any necessity that the case shall assume that form. * * *'."

After stating that certain certified questions in the case had not been previously passed upon by this Court, the opinion in the *Blevins* case uses this language:

"But in other jurisdictions the principles involved in those questions have been elaborately discussed. 'Where

a state seeks directly or by authorization to others to sell land for taxes upon proceedings to enforce a lien for the payment thereof, it may proceed directly against the land within the jurisdiction of the court, and a notice which permits all interested, who are "so minded", to ascertain that it is to be subjected to sale to answer for taxes, and to appear and be heard, whether to be found within the jurisdiction or not, is due process of law within the 14th Amendment to the Constitution.' *Leigh* v. *Green,* 193 U. S. 79, 24 S. Ct. 390, 48 L. ed. 623. In accordance therewith the Court held that the rights of a lienholder were not violated by a sale on an order of publication.

"Notice by publication, that proceedings to sell lands, the title to which is vested in the State by virtue of a sale by the sheriff and the expiration of the time for redemption, meets the requirement of due process of law under the Fourteenth Amendment to the Federal Constitution. *Longyear* v. *Toolan,* 209 U. S. 414, 28 S. Ct. 506, 52 L. ed. 859.

"The Constitution of this State and the statutes then in force, relative to lands forfeited for nonentry on the land books, are discussed, analyzed, and approved as constituting due process in the case of *King* v. *Mullins,* 171 U. S. 404, 18 S. Ct. 925, 43 L. ed. 214. Therein it was said:- 'The system established by the Constitution and laws of West Virginia (Const. Art. 13; Code c. 105), under which taxable lands are forfeited to the State for neglect by the owner for five consecutive years to enter them upon the proper land books for taxation, and under which such lands, upon petition required to be filed in the proper court by the state's representative, are sold, after actual or constructive service upon the owner, and with liberty to him to intervene and redeem, is not inconsistent with due process of law guaranteed by the federal constitution.' "

The above quotation from *King* v. *Mullins,* 171 U. S. 404, 18 S. Ct. 925, 43 L. ed. 214, incorporated in the opinion in the *Blevins* case, appears in Headnote 2 of the report

of the *King* case in 18 S. Ct. 925. In the opinion in that case, substantially the same statement is made in this form: "* * * we hold that the system established by West Virginia, under which lands liable to taxation are forfeited to the state by reason of the owner not having them placed or caused to be placed, during five consecutive years, on the proper land books for taxation, and caused himself to be charged with the taxes thereon, and under which, on petition required to be filed by the representative of the state in the proper circuit court, such lands are sold for the benefit of the school fund, with liberty to the owner, upon due notice of the proceeding, to intervene by petition, and secure a redemption of his lands from the forfeiture declared, by paying the taxes and charges due upon them, is not inconsistent with the due process of law required by the constitution of the United States or the constitution of the state."

In the opinion in the *Blevins* case this Court also said: "Numerous cases in other jurisdictions hold that proceedings to collect taxes are sui generis with respect to the notice necessary to constitute due process of law, and thus recognize a distinction between ordinary suits and actions and a proceeding to sell lands to enforce collection of taxes. See *Winona & St. Peter Land Co.* v. *Minnesota,* 159 U. S. 526, 16 S. Ct. 83, 40 L. ed. 247; *Spitcaufsky* v. *Hatten* (Mo.), 182 S. W. 2d 86; *Ball* v. *Ridge Copper Co.* (Mich.), 76 N. W. 130; *Merchants' Trust Co.* v. *Wright* (Cal.), 118 P. 517; *Woodrough* v. *Douglas County* (Neb.), 98 N. W. 1092; *Williams* v. *Pittock* (Wash.), 77 P. 385; *Orange County* v. *Jenkins* (N. C.), 156 S. E. 774; *Napier* v. *City of Springfield* (Mass.), 23 N. E. 2d 157; *City of Coral Gables* v. *Certain Lands, etc.* (Fla.), 149 So. 36; *City of Buffalo* v. *Hawks,* 236 N. Y. S. 89; *City of Utica* v. *Proite,* 36 N. Y. S. 2d 79."

The opinion in *State* v. *Gray,* 132 W. Va. 472, 52 S. E. 2d 759, contains these statements: "We hold, therefore: (1) That when the real estate proceeded against in this cause became irredeemable * * *, the former owner, and

all persons having an interest in, or liens upon said land, lost all their right, title and interest therein, and the said land became the absolute property of the State; (2) that under the Constitution of this State a judicial proceeding is necessary to sell said lands under the provisions of Section 4, Article XIII of our Constitution, and that in said proceeding the Legislature has the power to provide for such sale without making the former owner or other interested persons therein a party thereto; * * *; and (6) that Chapter 160 of the Acts of 1947, * * * is valid and binding upon the courts of this State."

To sell delinquent lands for the benefit of the school fund, under a valid legislative enactment, it is essential that the suit in the circuit court of the county in which the lands are situated be a judicial proceeding, and that the lands sold by the sheriff and purchased by the State have become irredeemable and the absolute title to them has become vested in the State. *State* v. *Blevins,* 131 W. Va. 350, 48 S. E. 2d 174; *State* v. *Gray,* 132 W. Va. 472, 52 S. E. 2d 759; *State* v. *Farmers Coal Company,* 130 W. Va. 1, 43 S. E. 2d 625; *Sims* v. *Fisher,* 125 W. Va. 512, 25 S. E. 2d 216.

The first question certified by the circuit court, in the exact form now presented, was not decided in the *Blevins* case, as it appears that the two defendants, who attacked the constitutionality of the statute, Blevins and Ray, former owners of the lands sold, were named as defendants, were personally served with process, and were also proceeded against by order of publication. Nor was the question specifically passed upon as a point of decision in the *Gray* case, for the reason that the two defendants who challenged the validity of the statute, Brown and Hill, entered a general appearance in the suit and filed separate demurrers to the bill of complaint. Consequently the question of the validity of the process under the statute in that case was not actually raised or determined. Both the *Blevins* case and the *Gray* case, however, deal with the right or the privilege of redemption

of the former owner of, and of other persons having an interest in, forfeited or delinquent lands, and the time within which that right or privilege may be exercised, as accorded by the State, purely as matters of grace, not of right, and give recognition to the power of the Legislature to modify and control the exercise of such right or privilege by subsequent legislation. Under the reasoning expressed in the opinion in the *Blevins* case, which is here adhered to and followed, a former owner of delinquent land, which has become irredeemable and the title to which has become vested in the State, in a suit instituted under Chapter 160, Acts of the Legislature, 1947, Regular Session, to sell such land for the benefit of the school fund, may be proceeded against by order of publication, as provided for by Section 12, Article 4, and need not be personally served with process in such suit.

In view of statements in points 4 and 7 of the syllabus, and in the majority opinion in the *Gray* case, however, with respect to the operation and the effect of the provisions of Section 12, Article 4, of the statute, that the summons should be served on a named defendant in the manner provided by law for the service of process in other chancery suits, and that the failure to serve the summons on any named defendant shall in no wise affect the validity of any of the proceedings in a suit to sell the title of the State to lands involved in such suit, it is necessary to reexamine, consider and determine in this suit the scope and the effect of those provisions of that section. The majority of this Court which approved and adopted the opinion prepared by Judge Fox in the *Gray* case consisted of Judges Fox, Kenna and the writer of this opinion. The other two members of this Court at that time, Judges Lovins and Riley, though concurring in the result, disagreed with statements in points 4 and 7 of the syllabus and in the majority opinion as pointed out in the concurring opinion prepared by Judge Lovins.

The statements, in the syllabus or in the majority opinion in the *Gray* case, as to which the members of this

Court disagreed were to the effect that the provision of Section 12, Article 4, of the statute that the summons should be served on a named defendant in a suit to sell lands for the benefit of the school fund, imposed a mandatory duty upon the State to secure personal service of process on all named parties residing within the jurisdiction of the court in which such suit is instituted, and that the final provision of Section 12, Article 4, that failure to serve the summons on any named defendant should in no wise affect the validity of any of the proceedings in such suit, was intended to cover cases of inadvertence, or, in particular, instances in which the names of owners and claimants are not known, and was not intended to nullify the requirement of personal service of process on named parties residing within the jurisdiction of the court in which the suit is instituted. After further consideration of the foregoing statements and the questions to which they relate, the writer of this opinion concurs in the views with respect to those statements expressed in the concurring opinion of Judge Lovins in the *Gray* case. The statements in the majority opinion in the *Gray* case, relative to the provisions of Section 12, Article 4: "As we construe this statute, it is the mandatory duty of the State, in a suit instituted by it under Section 12 of Chapter 160, of the Acts of 1947, to secure the personal service of process on all named parties residing within the jurisdiction of the court in which the suit is instituted." and "In view of the mandatory requirement of service of process contained in the first portion of Section 12, of the 1947 Act, we are of the opinion that the last paragraph thereof should be construed as intended to cover cases of inadvertence, or, in particular, where the names of owners and claimants are not known, and not as nullifying the requirement of service aforesaid." are manifestly inconsistent and contradictory. It is well established that mandatory statutes are imperative and must be strictly pursued, *Hallanan* v. *Hager,* 102 W. Va. 689, 136 S. E. 263; *State* v. *Wetzel,* 75 W. Va. 7, 83 S. E. 68, Ann. Cas. 1918A, 1074; *Daniel* v. *Simms,* 49 W. Va. 554, 39 S. E. 690; 50 Am-

Jur., Statutes, Section 20; and it is obvious that a statement, express or implied, that the requirement of a mandatory statute may be complied with or satisfied through inadvertence is a direct contradiction in terms. In consequence, the statements in points 4 and 7 of the syllabus in the *Gray* case to the effect that personal service of process on former owners and other named defendants in a suit instituted under Chapter 160, Acts of the Legislature, 1947, Regular Session, will be enforced by the courts and is required where such service can be had, are regarded as relating to questions which were not then presented for decision, the statements of like import in the majority opinion in that case are considered to be obiter dicta, and all such statements, both in points 4 and 7 of the syllabus and in the majority opinion, are disapproved.

Despite any provision of Section 12, Article 4, which precedes the final provision of that section of the statute, it is manifest that the Legislature in enacting the section, intended that the failure to name the former owner of the land involved in a suit instituted under Chapter 160, Acts of the Legislature, 1947, Regular Session, or any person claiming under him, as a defendant, or the failure to serve the summons on any named defendant, should in no wise affect the validity of any of the proceedings in such suit. The provision of Section 12, Article 4, that "The summons shall be served on the named defendants in the manner provided by law for the service of process in other chancery suits.", and the final provision of the same section that "In view of the fact that the state has absolute title to all forfeited land, to all land sold to the state for nonpayment of taxes and become irredeemable, to all escheated land, and to all waste and unappropriated land, and must under the constitution have such an absolute title before the land may be sold for the benefit of the school fund; and in view of the fact that the former owner of any such land, or any person claiming under him, has no further interest therein nor rights in respect thereto except such privilege of redemption as may be extended

to him by the Legislature as an act of grace; and in view of the further fact that all parties known and unknown who may claim an interest in any of the land included in the suit are given notice thereof by the order of publication provided for above; therefore, the Legislature deems it both expedient and necessary to provide that failure to name any such person as a defendant, or failure to serve the summons on any named defendant, shall in no wise affect the validity of any of the proceedings in the suit for the sale of the state's title to such land.", should be read and considered together and proper effect given to each provision. When these provisions are so read and considered, and when effect is given to the section in its entirety, it is clear that the provision that the summons shall be served on the named defendants in the manner provided by law for the service of process in other chancery suits is not mandatory, but directory, in character. See discussion of mandatory and directory statutory provisions in *Morris* v. *Board of Canvassers of City of Charleston,* 49 W. Va. 251, 38 S. E. 500, and in *Mears* v. *Dexter,* 86 Va. 828, 11 S. E. 538, in both of which cases certain positive provisions of statutes were said to be directory rather than mandatory.

In the *Mears* case a provision of a Virginia Statute, which was not complied with, and which declared that the clerk of a lower court "shall" file a certificate with the transcript of the record to the effect that appellant has given appellee notice of his intention to apply for a transcript with a view to appeal, was held to be merely directory. In the opinion, after discussing statutes, mandatory or directory in character, the court used this pertinent language: "It is sometimes said that whether a statute is directory or mandatory depends upon whether it contains affirmative or negative words; that words of the former class are directory merely, whereas negative words will make a statute imperative. But this is not a safe test in all cases; for, no matter what the words are, the intention of the legislature, when that can be ascertained, must govern, and, if the intention be to make

compliance with the statute essential to the validity of the proceedings, then the statute is mandatory; otherwise it. is not. Or, as it was expressed in *Corbett* v. *Bradley*, 7 Nev. 108: 'If it be clear that no penalty was intended to be imposed for a non-compliance, then * * * it is but carrying out the will of the legislature to declare the statute in that respect to be simply directory. But, if there be anything to indicate the contrary, a full compliance must be enforced.' "

Section 12, Article 4, considered and construed as a whole, means that in a suit to which it applies, the former owner of the land involved, and any other persons having or claiming an interest in such land, may or may not be named in the summons; that if any such person shall be named as a defendant, he may or may not be personally served with process in the suit; that an order of publication, setting forth the requisite facts and information, shall be entered; and that the former owner, and all other interested persons, whether named or not named as defendants, may be validly proceeded against by such order of publication, even though such persons may reside within the jurisdiction of the court in which such suit is instituted. The section, as so interpreted and applied, is directory, not mandatory, in character. It satisfies the requirements of due process of law and is not violative of any provision of the Constitution of the United States or of the Constitution of this State. It was not necessary to obtain personal service of process upon the petitioner, Cottrell, the former owner of the lot proceeded against, and the proceedings had upon the order of publication are valid and binding upon him as a named defendant in this suit. In *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174, this Court, citing *Longyear* v. *Toolan*, 209 U. S. 414, 28 S. Ct. 506, 52 L. ed. 859, said that it is not a violation of due process of law to award an order of publication, authorized by statute, against a resident defendant.

The second certified question is controlled and disposed of by the decision of this Court in *State* v. *Blevins*, 131 W.

Va. 350, 48 S. E. 2d 174. In that case this Court held, in points 3 and 4 of the syllabus, that in a suit to sell delinquent and forfeited lands for the benefit of the school fund, as provided by Chapter 160, Acts of the Legislature, 1947, Regular Session, persons holding record liens, persons having or claiming an interest in, and persons in possession of, such lands, may be proceeded against by an order of publication, as unknown defendants; that such procedure is not violative of the due process provisions of the Constitution of the United States or of the Constitution of this State; and that the court may, in such suit, enter a decree of sale, even though such unknown defendants may be residents of this State. It follows that the proceedings against Drake, who was proceeded against as an unknown defendant, based upon the order of publication in this suit, are valid and binding as to him.

The plaintiff and the defendants, Cottrell and Drake, are in complete disagreement concerning the nature of the right or the privilege of redemption accorded by the statute to the defendants, respectively, as the former owner of, and as a person interested in, the land proceeded against in this suit. The plaintiff insists that the right or the privilege is a mere gratuity which may be granted or withheld, and if granted, may be withdrawn or restricted, in the discretion of the Legislature. Among the cases which it cites to support this view are *State* v. *King*, 64 W. Va. 546, 63 S. E. 468; *State* v. *Mathews*, 68 W. Va. 89, 69 S. E. 644; *Blooming Rose Coal Company* v. *White*, 128 W. Va. 502, 37 S. E. 2d 455; *James Alexander, Inc.* v. *United States*, 128 F. 2d 82; *State National Bank* v. *Morthland*, 196 Ark. 346, 118 S. W. 2d 266; *Messer* v. *Lang*, 129 Fla. 546, 176 So. 548, 113 A. L. R. 1073; *Muirhead* v. *Sands*, 111 Mich. 487, 69 N. W. 826; *Baker* v. *State Land Office Board*, 294 Mich. 587, 293 N. W. 763; *Butler* v. *Palmer*, 1 Hill (N. Y.) 324. In opposition to this position, the defendants contend that the right of redemption is a substantial equity or vested property right which, when granted by the Legislature, will be protected by the courts as long as it exists. To sustain this contention they

216

cite and rely upon *Neal* v. *Wilson*, 79 W. Va. 482, 92 S. E. 136; *White* v. *Wickham and Son, Inc.*, 112 W. Va. 576, 165 S. E. 805; *Shipley* v. *Browning*, 114 W. Va. 409, 172 S. E. 149; *Early* v. *Berry*, 115 W. Va. 105, 175 S. E. 331; *Bank of Quinwood* v. *Becker*, 119 W. Va. 534, 194 S. E. 849. In the cases last cited this Court mentions the right of redemption as an equity of redemption, a substantial equity, or a property right. In all the cases decided by this Court, cited in this paragraph of this opinion, however, it dealt with the particular statute in force at the time relative to the sale of delinquent, forfeited, escheated, waste, or unappropriated lands, and in each instance the statute under consideration differed materially from the statute here involved. In consequence, the holdings in those cases are not controlling in this suit. It is significant, however, that in all of its decisions in the above cited cases the right or the privilege of redemption, by whatever terms mentioned or described, was recognized by this Court as a mere grace accorded by, and not required of, the State. In the opinion in *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174, this Court said: "Strictly speaking, the former owner has no right to redeem his land from sale for tax delinquency and forfeiture for nonentry. As to forfeiture see point 19, syllabus, in the case of *State* v. *King, supra,* wherein it is stated: 'The privilege given by statute to redeem forfeited lands is a mere grace of the State, not its duty, and does not constitute a vested property right in the former owner.' See *Lawson* v. *Coal Land Co.*, 73 W. Va. 296, 299, 81 S. E. 583. There is a difference between delinquency and forfeiture. *Waggoner* v. *Wolf*, 28 W. Va. 820, 828. Nevertheless, the former owner is divested of his title where land has been sold for nonpayment of taxes and has become irredeemable. The privilege of redemption as to lands sold for delinquent taxes is the same as the privilege relating to forfeited lands and is one of grace only."

For the purposes of this suit and under the provisions of Chapter 160, Acts of the Legislature, 1947, Regular Session, however, the exact character of the right or the priv-

ilege of redemption is unimportant and inconsequental. Whether regarded as a mere privilege, grace, or gratuity accorded by the State and which may be restricted or revoked at the will of the Legislature, as dealt with by this Court in *State* v. *King*, 64 W. Va. 546, 63 S. E. 468; *State* v. *Mathews*, 68 W. Va. 89, 69 S. E. 644; *Blooming Rose Coal Company* v. *White*, 128 W. Va. 502, 37 S. E. 2d 455; and *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174, by statutes which operate prospectively, or as a substantial equity or a property right, which, as long as it exists, will be protected by the courts, as indicated by expressions in *Neal* v. *Wilson*, 79 W. Va. 482, 92 S. E. 136; *White* v. *Wickham and Son, Inc.*, 112 W. Va. 576, 165 S. E. 805; *Shipley* v. *Browning*, 114 W. Va. 409, 172 S. E. 149; *Early* v. *Berry*, 115 W. Va. 105, 175 S. E. 331; and *Bank of Quinwood* v. *Becker*, 119 W. Va. 534, 194 S. E. 849, such right or privilege is adequately safeguarded and protected by the statute which satisfies the requirements of due process of law and is not violative of any provision of the Constitution of the United States or of the Constitution of West Virginia. *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174; *State* v. *Gray*, 132 W. Va. 472, 52 S. E. 2d 759. Section 8, Article 3, Chapter 160, Acts of the Legislature, 1947, Regular Session, permits the former owner, and any person entitled to pay the taxes, to redeem the land at any time within eighteen months from the date of purchase of such land by the State and Section 18, Article 4, of the same Act, provides that the former owner or other person entitled to redeem any forfeited or delinquent land may, at any time before confirmation of the sale, file his petition for permission to redeem such land in a suit instituted under the statute to sell forfeited and delinquent lands. Section 12, Article 4, requires notice of the object of the suit and of the time within which such persons may appear and protect their interests, to be given by an order of publication which, in fact and in law, affords ample opportunity to any former owner or other person interested, who desires, and is entitled, to redeem the land proceeded against, seasonably to do so in such suit. Section 28, Arti-

cle 4, recognizes and protects the constitutional right of the former owner to the excess of the proceeds of the sale of the land, over the taxes charged or chargeable on such land with interest and costs, which excess is personal property. *Wiant* v. *Hays,* 38 W. Va. 681, 18 S. E. 807, 23 L. R. A. 82; *Sims* v. *Fisher,* 125 W. Va. 512, 25 S. E. 2d 216. In view of the reasonableness of these provisions of the statute, it can not be said that it deprives any person subject to its terms of any right which may not be taken from him without due process of law.

Full consideration has been given to the respective arguments offered in behalf of the plaintiff and the defendants in this suit. The plaintiff emphasizes the confusion and the hardship which would result from a large number of sales of forfeited and delinquent lands to many different purchasers involving much valuable property and large amounts of money in other suits, in which the procedure resorted to in this suit was adhered to and followed, if the sale of the land formerly owned by the defendant Cottrell is nullified in this proceeding. In behalf of the defendants it is pointed out that the defendant Cottrell will incur liability under his covenant of general warranty and that the defendant Drake, who can recover only the purchase price which he paid Cottrell for the lot, will suffer the loss of his lifetime savings expended in improving it with a dwelling house. Either result is, of course, regrettable; but the consequent hardship to the plaintiff or the defendants, as the case may be, can not influence or control the decision in this or any other case which this Court is required to consider and decide. The conclusive answer to the argument of the plaintiff is that the consequences of errors of law or mistakes in proceedings committed by litigants can not deter this Court from the performance of its solemn and imperative duty to ascertain and apply the law as enacted by the Legislature within the limits imposed by constitutional restraints upon its legislative powers. The plea of hardship now so earnestly advanced by the defendants is disposed of by the mere assertion that Cottrell, as a

landowner, is charged with the duty to enter it for taxation and with the knowledge that if so entered it is subject to the assessment of taxes which, to protect his title, must be paid to maintain orderly government by which alone his person and his property are made secure, and that Drake, as the possessor of and the claimant to the land, is chargeable with knowledge that it is subject to taxation, that the taxes assessed against it must be paid to prevent its sale for taxes, and that, at the risk of its loss, he is required to ascertain the state of the title to it, before he becomes its purchaser. The failure of each of them to discharge the duty imposed by law, or to utilize the knowledge with which he is charged by law, whether due to negligence, inadvertence, forgetfulness or other appealing but legally inadequate excuse, is the real cause of the regrettable misfortune which now attends them.

The first and second certified questions are answered in the affirmative and, as such answered questions are decisive of this case, the third, fourth and fifth certified questions need not be, and are not, considered, answered or discussed.

For the reasons stated the circuit court should have sustained the demurrer of the plaintiff to the petition, and its action in overruling the demurrer is reversed.

*Ruling reversed.*

Fox, JUDGE, dissenting:

I am unable to concur in the decision of the majority in this case, and in order to state my views on the questions involved, file this dissent.

The majority opinion holds that the Legislature has constitutional power to provide for the sale of land forfeited to the State, or land sold by the sheriff, purchased by the State, and which has become irredeemable, in the judicial proceeding required by Section 4, Article XIII of the Constitution of this State, without making the former owner, in whose name the property was forfeited or sold, a party to the proceeding, and that it has properly exer-

cised such power. After mature study, I am of the opinion that it does not possess such power.

In *Sims* v. *Fisher*, 125 W. Va. 512, 25 S. E. 2d 216, we held that Section 4 of Article XIII required that the proceeding provided for therein to sell land, the title to which had become vested in the State, must be a judicial proceeding "requiring process or notice in advance of hearing", which, necessarily, involved the naming of some person or persons upon whom notice could be had, a process issued, and service thereof, and that there must be a judicial finding in such proceeding that the land was subject to sale. Apparently, at that time, it was never questioned that the Legislature had the power, if it desired to exercise it, to require the naming of former owners, or other interested persons, as parties defendant to such proceeding, and the service of process on such persons, if within the jurisdiction of the court, and to provide for other character of notice if they were not within the jurisdiction of the court before whom the proceeding should be instituted. That case was followed by *State* v. *Farmers Coal Co.*, 130 W. Va. 1, 43 S. E. 2d 625, in which we held as unenforceable a statute which did not provide a definite period for redemption after a forfeiture, or after a sale by a sheriff, and purchase by the State, beyond which the land became irredeemable, and subject to sale under Section 4 of Article XIII aforesaid. This brought about a new Act which did provide a certain fixed date subsequent to such forfeiture or sale, when such land became irredeemable, at which time any interest in the land on the part of the former owner, or those holding under him, ended and the absolute title to the land involved became vested in the State. Subsequent to this decision, this Court decided the cases of *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174; and *State* v. *Gray*, 132 W. Va. 472, 52 S. E. 2d 759.

But, the *Blevins* case and the *Gray* case were decided under the provisions of Chapter 160, Acts of the Legislature, 1947, Section 11 of which required the naming as

parties defendants the former owner in whose name the land was forfeited or sold as the case might be; and Section 12 required the issuance of summons against such named defendants in a form prescribed, and that "The summons shall be served on the named defendants in the manner provided by law for the service of process in other chancery suits." It will be observed that only the former owners were required to be named as defendants, and the section then provided for the publication of a notice, in the form of an order of publication, as to persons who might have some other type of interest in the land involved and who were not named defendants. But, after making what I contend was a mandatory requirement, Section 12 ends with the following:

> "* * * the Legislature deems it both expedient and necessary to provide that failure to name any such person as a defendant, or failure to serve the summons on any named defendant, shall in no wise affect the validity of any of the proceedings in the suit for the sale of the state's title to such land."

In the *Gray* case, notice of this inconsistency is taken, and a majority of the Court held that service of process was required, where it could be had, notwithstanding the inconsistent provision of the Act. It is now proposed to change this ruling and to hold that the first provision of Section 12 which provides that such process "shall be served on the named defendants" means nothing, and that the nullifying provision at the end of the section controls and shall be given full force and effect.

In my opinion, if we adopt, as I think we must, the theory that the State, being absolute owner of land which has become irredeemable, either from forfeiture or sale, it follows that it has power to dictate the terms upon which its own property may be sold, so long as the requirements of due process of law are observed, and, heretofore, until the enactment of Chapter 134, Acts of the Legislature, 1949, has always elected to require that the former owner be made a party to the judicial proceeding

provided for by Section 4 of Article XIII of our Constitution. Admittedly, under the 1949 Act this is no longer required. But, this suit was instituted and prosecuted under the provisions of Chapter 160, Acts of the Legislature, 1947, and, in my opinion, the Legislature of 1949 had no constitutional power to enact legislation affecting rights which had been provided for by the very legislation under which this suit was instituted and prosecuted. Certainly the State had the power to require service of process on the former owner, and so long as the legislation which made that requirement is in force and effect, officers of the State, and the courts of the State should be bound thereby. Where a suit or action is instituted under existing legislation, the parties thereto are entitled to have the case determined as the law was at the date either was instituted. The rules of the game cannot be changed while the game is in progress, and for this reason I do not think that the 1949 legislation should be considered in the case at bar.

Section 5 of Article XIII of our Constitution provides that upon timely application therefor, the former owner is entitled to the proceeds from the sale of any land sold under the judicial proceeding required by Section 4 of said Article, remaining after the payment of taxes and a proportionate share of the costs of the proceeding. This right has been held not to be an interest in land, but personal property, *Wiant* v. *Hays,* 38 W. Va. 681, 18 S. E. 807, *McClure* v. *Maitland,* 24 W. Va. 561, and does not amount to an interest in land. It is not a redemption provision because to so hold would be in conflict with Section 4, which, as we have held, requires the land involved to have become irredeemable, and the title thereto to be absolutely in the State before the proceeding to sell the land can be instituted. Therefore, any idea that Section 5 is, in legal effect, a redemption provision must be cast aside. But the right to this excess is a constitutional right, and a property right, *Wiant* v. *Hays, supra,* if asserted within two years after sale as required by the Constitution, and it seems entirely fitting that the Legis-

lature should deem it wise, proper and fair to make the former owner a party to the suit, to the end that he might protect his right to such excess. The 1947 Act prohibits the former owner from purchasing the land formerly owned by him, and the only possible manner in which he can protect his interests is by filing a petition asking that the excess be paid to him. This provision against the purchase by the former owner was upheld in *State* v. *Blevins, supra.* This right to the excess, being a constitutional right, and one which the Legislature could not destroy, it was apparently in recognition of that right that all Legislatures, prior to 1949, considered it fair, and perhaps necessary, to require that the former owners be named as defendants and be served with process where such process could be had within the jurisdiction of the court, and to publish notice to those outside such jurisdiction, or unknown persons who might have some interest in the land involved.

Aside from these considerations, if the land which has become irredeemable, and the absolute property of the State, could be sold without making former owners parties to the proceeding required under Section 4 of Article XIII of our Constitution, then it has the power, through the Legislature, to prescribe the manner in which such property should be sold, and it has heretofore done so by requiring that former owners be named as parties defendant and served with process. Having so enacted, there would seem to be no reason why the Legislature's will should not be made effective. Apparently the Legislature has enacted a statute, Section 12 of Chapter 160, Acts of the Legislature, 1947, which in one breath says that named parties, who are former owners, should be served with process as in other chancery suits, and by other language, in the same section, provides that failure to do so will not affect the validity of the proceeding. Given the construction that the later provision nullifies, in effect, the first, then the Act of 1949 was wholly unnecessary and the amazing attempt of the Legislature to legislate upon the intentions of a former Legislature,

made up, in part, of different members, need not have been resorted to in order to correct or nullify the effect of the failure or refusal of the deputy commissioners of forfeited and delinquent lands in the various counties to carry out a duty to secure the service of process on named defendants within the jurisdiction of the court, as plainly required by the statute.

I do not believe that we should hold that the Legislature ever intended to relieve the State of the duty of serving process on named defendants, who were the former owners of the land sought to be sold, where such process could be had within the State. Section 11 made mandatory the requirement that the former owners should be named as defendants, and Section 12 plainly requires that they should be served with process the same as in other chancery suits, and this, I think, was its paramount purpose. The Legislature of 1947 was composed of sensible men, and in requiring such service of process it was merely following former legislation, and long continued custom, in requiring that former owners be made parties and served with process, if within the jurisdiction of the court, in suits seeking to dispose of land formerly owned by them, and in which they still had an interest to the extent of having a right to the excess provided by Section 5 of Article XIII of the Constitution. I have no doubt that the Legislature was in good faith in making this requirement, because it conforms to fairness, and furnishes the former owner another opportunity to save his land in this indirect way. I think the Legislature felt that mistakes or inadvertences, following an honest attempt to secure process, should not be allowed to affect the validity of any of the proceedings as to those not affected by such mistakes or inadvertences. Whether that provision meant the proceedings as to a person not served, or the proceedings as a whole, I do not know. The use of the word "inadvertence" is criticized but its meaning, as used in the *Gray* case, was intended to cover errors which might creep into any proceeding covering a number of individuals, and different lots and parcels of land. What-

ever we may say about the use of language, it must be apparent to everyone, that what the Legislature intended was that there should be service of process. Giving Section 12 the interpretation contended for by the State, the provision in respect to process need not have been written, and it is scarcely conceivable that the Legislature intended to go to the extent of prescribing the language of the summons, and requiring it to be served in the manner provided by law for the service in other chancery suits, and at the very end of the section provide that such failure to do so should not affect the proceeding. I think the probable intent was that the proceeding as a whole should not be affected. I am quite certain that it was not intended that the requirement of the service of process should be absolutely ignored, as was done in this case, the result of which has been to engulf the life savings of an innocent purchaser, not the former owner, upon whom the duty rested to pay his taxes. We had this question before us in *State* v. *Gray, supra,* and we there held, in effect, and it may be by way of permissible dicta in the circumstances, that it was the mandatory duty that the State have process served on former owners, if found within the jurisdiction of the court.

After the decision in *State* v. *Blevins, supra,* and probably before that decision, a large number of suits were, or had been, instituted to sell lands in the various counties of the State which were forfeited or delinquent and sold in those counties. Apparently the deputy commissioners of forfeited and delinquent lands ignored, in some instances, their plain duty, and did not take the trouble to have process served on resident named defendants. When the *Gray* case was decided there was an immediate outcry, resulting in the Legislature, which was then in session, passing Chapter 134, Acts of 1949, in which they undertook to legislate the intention of the Legislature of 1947, in enacting Section 12 of Chapter 160, Acts of that session. The holding in the *Gray* case on Section 12 was given mature consideration at that time, not only because the provision of the act as to service of process

seemed fair and advisable from every standpoint, but because it was a plain, and as I believe, a mandatory requirement. I regret that it is now deemed advisable to change the decision there reached. I see no reason why that decision should be disturbed. In the first instance, I think the Legislature plainly intended that process should be served when possible to do so on named defendants, and in the second place, I do not think it within the range of probabilities that any Legislature would do the futile thing of making a requirement of the service of process in one section, and end the same section by providing that the failure to do so should not affect the proceeding as to former owners residing within the jurisdiction of the court and not served with process. At the very most, it was intended to protect the proceeding as a whole, but not to lay the foundation for a decree affecting the interest of a person who was the former owner, required to be named as defendant, and required to be, but not served with process. If the failure of the deputy commissioner to carry out his plain statutory duty creates confusion with respect to land titles in the State, neither the Legislature nor this Court is to be blamed for such a situation. The State, through its Legislature, had a right to prescribe the method of procedure in a suit to sell its own property under Section 4 of Article XIII of the Constitution. The fact that it may not have been required to make the former owners parties defendant need not be considered. It had the power to prescribe this procedure. It had no constitutional power to change the procedure, and make such change effective to cover suits already instituted before the change was made. The decisions of this Court will, I think, be searched in vain to find a case where procedural changes are made to apply to legislation pending at the time the change is made. Statutes of limitation and other kindred statutes, being procedural in their nature, are often changed, but they are not made to apply to pending legislation, or permitted to take effect until those who would be prejudiced thereby are given a reasonable time in which to protect themselves. In my

opinion the Act of 1949 was entirely beyond the constitutional power of the Legislature. What the 1947 Legislature intended must be arrived at from what that Legislature said and not by what a future Legislature, by solemn enactment, conceived that intention to be.

In the brief filed by counsel for the State, it is tacitly admitted that deputy commissioners of forfeited and delinquent land throughout the State have not, in suits instituted under Chapter 160, Acts of 1947, followed the requirements of Section 12 thereof in relation to the service of process on named defendant residents within the jurisdiction of the courts of this State, and point to the confusion which will arise from sustaining the ruling of the trial court in the suit now before us, in that a great many sales would necessarily have to be set aside, resulting in unsettled titles to numerous tracts and parcels of land. All this may be true; but, the confusion which may result from affirming the ruling of the circuit court would be trivial, as compared to that which may result from a holding that in decreeing a sale of forfeited and delinquent lands without service of process on the former owner, so far as that process can be obtained within the jurisdiction of the courts, constitutes lack of due process of law. When the Legislature of this State, considering both Sections 4 and 5 of Article XIII of the Constitution, enacted a statute which, as interpreted by this Court, permits the sale of such lands without personal service on the former owner, who has a property interest in the proceeds to be derived from the sale of the land formerly owned by him, then is raised the question of due process of law required by both our State and Federal Constitutions. It is a question in which the judgment of this Court is not final because of the federal question involved, and there is grave doubt whether, under the provisions of the Fourteenth Amendment to the Constitution of the United States prohibiting any State from depriving any person of life, liberty or property without due process of law, or denying to any person within its jurisdiction the equal protection of the law, due process and equal protection

of law has been afforded the former owner by the majority opinion. Of course, our own Constitution, Section 10 of Article III, provides that: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

Perhaps the one case which is considered as a final judgment of the Supreme Court of the United States on our forfeited and delinquent land laws is *King v. Mullins*, 171 U. S. 404. This was a case where the land had been forfeited, and in a suit instituted under what was then Chapter 105 of the Code, the lands were sold under the authority of Section 4, Article XIII of our State Constitution, and purchased by various persons. Therefore, the court had before it only the question of lands forfeited and sold, but I apprehend that the same rule would have been applied had the case been one involving the sale of land by the sheriff, purchased by the State and which had become irredeemable, and the same character of suit had been instituted to dispose of the same. The opinion, written by Justice Harlan, shows his clear understanding of the reasons for our system with respect to the collection of taxes, and the sale of land delinquent for the non-payment of taxes or forfeiture for nonentry. The decisions of this Court, up to that date, were discussed and applied, and the final result was reached that the methods prescribed by the statute for the sale of such land did not violate the constitutional requirement of due process of law in depriving one of life, liberty or property which means, of course, reasonable notice and an opportunity to be heard.

But the basis of this holding was the statute as it then existed, which required process, not only on the former owner but upon all parties who were known to be interested in the land sought to be sold, so long as that process could be obtained within the jurisdiction of the courts; and where that could not be done, the publication of an order of publication. The suit in which the land was sold in that case, as in all cases of that character, was con-

sidered a regular chancery suit. I think the real basis of the decision in *King* v. *Mullins, supra,* will be found by reading the following quotation from the opinion:

"It is said that this shows that the taxpayer, after his land is forfeited to the State, is left by the statutes of West Virginia without any right or opportunity, by any form of judicial proceeding, to get it back or to prevent its sale, and, therefore, it is argued, he is absolutely divested of his lands solely by reason of his failure to place them on the proper land books.

"An answer to this view is, that what was said in *McClure* v. *Maitland,* on this point, had reference to proceedings under the act of November 18, 1873, acts 1872-73, p. 449, c. 134, which were not judicial in their nature but administrative. But as declared in *Hays, Commissioner,* v. *Camden's Heirs,* 38 W. Va. 109, 110, the act of 1873 was so amended by the act of March 25, 1882, Acts W. Va. 1882, p. 253, c. 95, as to make the proceeding in the Circuit Court for the sale of forfeited lands, in which the owners or claimants could intervene and effect a redemption of their lands from forfeiture, a judicial proceeding. This view was reaffirmed in *Wiant* v. *Hays, Commissioner,* 38 W. Va. 681, 684, in which Judge Brannon, delivering the unanimous judgment of the state court, observed that what was said in *McClure* v. *Maitland* as to the landowner not being entitled of right to be made a party to the proceeding instituted for the sale of forfeited lands for the benefit of the school funds, had reference to the then existing act which was changed by the act of 1882. Answering the suggestion that the proceedings under the new law were not judicial, the court said: 'Now, why, with parties plaintiff and defendant, process, pleading, hearing between the parties, decree, etc., it is not, if not technically a chancery suit, yet a suit, I cannot see; a suit under a special statute, it is true, but none the less a suit. So, substantially, it was regarded in *Hays* v. *Camden's Heirs,* 38 W. Va. 109, 18 S. E. Rep. 461. Proceedings at rules take place as in ordinary and common law suits. In some places it is called a "suit." But I know that

it is said by those holding the other view that the question is not to be tested by the circumstances, such as I have alluded to, the presence of pleading, process, hearing, etc., but it must be tested by the nature of the proceeding; that is, that it is only an administrative process by the State, through an officer and court, to realize money on its own property. But to this I reply that though the State might make the proceeding such, and did in its acts up to 1882, yet by its act in 1882 it changed the proceeding from one *ex parte* to one *inter partes,* and clothed the proceeding with all the habiliments of a suit; and still it did not proceed against the land, taking the act of forfeiture as a concession, and simply at once sell the land, but it subjected its right and title under the supposed forfeiture to question and investigation under the law through a suit, called in all interested adversely to its claim, and gave them leave to contest its right, and made its claim the subject of litigation.'

"It thus appears that under the statutes of West Virginia in force after 1882 the owner of the forfeited lands had the right to become a party to a judicial proceeding, of which he was entitled to notice, and in which the court had authority to relieve him, upon terms that were reasonable, from the forfeiture of his lands."

The case of *Wiant* v. *Hays, supra,* is mentioned in said opinion, and furnishes an illustration of what the Supreme Court of the United States had before it when it decided the case of *King* v. *Mullins.* To me great doubt exists as to whether the Supreme Court of the United States, as then constituted, had it had before it Section 12 of Chapter 160 of the Acts of 1947, with the interpretation placed thereon by the majority, would have written the opinion it handed down in that form. What would be done under the present conditions and the spirit of the times, I do not know. But, in view of the fact that service of process can and should be had as a matter of fairness to former owners, who while having no interest in the land, as such, but a property interest in the proceeds, of any sale thereof above taxes and costs, and in view of the election of the

Legislature to require process, the paramount purpose of Section 12, aforesaid, must have been to require service of process. In my opinion, the majority of this Court, in the case at bar, take a grave risk in again permitting the question of due process of law to be raised in a suit growing out of our system of dealing with forfeited and delinquent lands. So long as we uphold the requirement of process, and other reasonable notice, we uphold the principles on which *King v. Mullins, supra,* was decided and our land titles, transferred under court proceedings, are secure. If we depart from those principles, grave results may follow.

In this connection, the rule of law is, as I understand, that a court in construing a statute will endeavor to give it such construction as to bring it within the terms of the Constitution; and will, if possible, avoid giving to it a construction which would make it unconstitutional, and, therefore, ineffective. Construing Section 12 of Chapter 160, of the Acts of 1947, as the State asks us to do, would, in my opinion, render the section invalid as to necessary parties not served with process, as the section plainly requires, for the reason that the property interest of the former owner in the excess, given him under Section 5 of Article XIII of the Constitution, makes him a necessary party. As stated above, I think it was the paramount purpose of the Legislature in enacting that section to require service of process where it could be had within the jurisdiction of the courts. If the language used in the section at the very end is to be construed as nullifying that purpose, then I think the section is invalid and unconstitutional, because the effect thereof is to deprive the former owner, with an interest, not in the land as such, but in the proceeds of the sale thereof, of his right to process in a suit in which his rights are involved, and thereby denies to him of his right of due process of law, and that the same violates both the State and Federal Constitutions. On the other hand, if the paramount purpose, as I believe it to have been, was to require process, then the Act is constitutional because due process of law

is provided for. In this connection I have not even considered Chapter 134, Acts of the Legislature, 1949, because I do not see how it can possibly be given any consideration. This is not important because, in the opinion of the majority, it was not necessary to enact Chapter 134. That construction of Section 12, as enacted in 1947, makes it unnecessary to rely on the later statute.

To me there is something repellant in the idea of depriving people of rights and property through the processes of the courts of the land without personal service of process where it can be had, or the best notice that can be given where, on account of the limits of jurisdictions, all interested parties cannot be reached.

It is contended by some, and apparently upheld by the majority of this Court, that because a former owner has lost his title to the land, as such, he can have no further interest in the suit authorized by Section 4 of Article XIII of the Constitution, although in Section 5 of the same Article the property interest of the former owner is protected, and provision is made for the filing of petition in the suit by which he gets the proceeds of the sale of the land, after taxes and costs are satisfied. The two sections must be used together to complete the sale of the land and distribute the proceeds. We cannot, in my opinion, say that the former owner is without an interest in the proceeding. He has a property right which he is entitled to protect. It may not be a right to the land, as such, but it is a right growing out of the land. Former Legislatures, since 1882, have always recognized the right of former owners to be a party to the suit instituted to sell forfeited and delinquent lands, and only when officers of the State failed in their duty to carry out the will of the Legislature, as plainly expressed, did it become necessary to take the last step and say that the former owner has no rights entitled to be respected in this or any other court.

I realize that some of the views expressed in this dissent are in conflict with those expressed in *State* v. *Gray, supra,* in which the opinion was written by me for the

Court. In that case appears the following language and holding:

> "We hold therefore: * * * (2) that under the Constitution of this State a judicial proceeding is necessary to sell said lands under the provisions of Section 4, Article XIII of our Constitution, and that in said proceeding the Legislature has the power to provide for such sale without making the former owner or other interested persons therein a party thereto; (3) that the provisions of Sections 11 and 12, Chapter 160, Acts of the Legislature, 1947, providing that former owners, and other interested persons, be made parties to such proceeding, and requiring the service of process on parties defendant, and an entry of an order of publication as to those not served, constitutes only an act of grace on the part of the State, and not an act required by Section 4 of Article XIII of the Constitution of this State; * * *."

Further study of the questions has brought me to the conclusion that Sections 4 and 5 of Article XIII of the Constitution, read together, require that former owners be made parties to the proceeding authorized by Section 4, not because they have any interest in the land, as such, but because they have a property interest in the proceeds of any sale of any land formerly owned by them respectively, made in such proceeding, after the payment of taxes and costs. Furthermore, I am now of the opinion that this right to be made a party to such proceeding, and to be served with process therein, where such process may be had within the State, amounts to more than a mere act of grace. I think it is a right which grows out of the two sections of the Constitution mentioned above. In *State* v. *Gray, supra,* the parties contesting the suit were not served with process, but they made a general appearance, and lack of process was not involved. For this reason, the contention of the State is that any reference thereto in the opinion in said case was dicta, and perhaps this is true; but if one holding in respect thereto is dicta, then all such references are. This, however, is not important.

I would affirm the ruling of the trial court first because of the inherent injustice involved in the use of the processes of the courts of the State to deprive anyone of his property. or rights without his day in court; and second because I feel that Section 12 of Chapter 160 of the Acts of the Legislature, 1947, should be construed to require service of process on Cottrell, the former owner of the lot of land involved in the case at bar, before any valid sale of said land can be effected.